United States District Court
Southern District of Texas
**ENTERED**
August 15, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CURTIS T PEDERSEN, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-03590** |
| | § | |
| **KINDER MORGAN INC, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM & ORDER</u>

The Court held a hearing on Defendant's Motion for Judgment on the Pleadings (doc. 56) on Thursday, July 21, 2022. At that hearing, the Court took the Motion under advisement. The Court now **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Judgment on the Pleadings and provides this Memorandum & Order to document its rulings and reasoning.

### I.    FACTUAL BACKGROUND

This matter concerns a retirement benefit plan controversy that came about because a series of corporate mergers resulted in now-contested changes to plaintiffs' retirement benefits. Named plaintiffs Curtis T. Pedersen and Beverly Leutloff are both participants in the Kinder Morgan Retirement Plan A ("Plan A") who worked for the ANR Company starting in 1979 and 1978, respectively. (Doc. 1 at ¶¶1-2.) The ANR Company is a natural gas pipeline owner and operator, founded in the 19th century. Mr. Pedersen retired from ANR Company in November 2019 and commenced his retirement benefits under Plan A on December 1, 2019. (*Id*. at ¶1). Ms. Leutloff still works for ANR Company and has not commenced her retirement benefits under Plan A even

though she has reached the retirement age of 62 because Kinder Morgan's Claims Administrator denied that she was eligible for "unreduced" retirement benefits at age 62. (*Id*. at ¶2).

### A. The Mergers

#### 1. ANR Company → Coastal Corporation

In March of 1985, the Coastal Corporation acquired the ANR Company. ANR Company continued to exist as a separate corporate subsidiary owned by the Coastal Corporation. (*Id*. at ¶17). When the Coastal Corporation acquired ANR in 1985, it amended the Coastal pension plan to provide for a "grandfather" of the ANR benefit formula and for participants to earn benefits under the Coastal Plan's benefit formula and receive the higher of the two. (*Id*. at ¶27).

#### 2. Coastal Corporation → El Paso Corporation

In January 2001, the El Paso Corporation acquired the Coastal Corporation, including its ANR subsidiary, and merged them both into the El Paso Corporation. (*Id*. at ¶18). After El Paso acquired Coastal, the Coastal Pension Plan and the El Paso Pension Plan were merged effective March 31, 2001. (*Id*. at 24). Section 6.10 of the sales agreement between El Paso and Coastal provided that El Paso "shall assume and honor the obligations of the Company [Coastal] and its Subsidiaries [which included ANR Pipeline] under all existing Company Employee Plans and shall perform the obligations of the Company and its Subsidiaries in the same manner and to the same extent that the Company and its Subsidiaries would have been required thereunder." (*Id*.)

#### 3. El Paso Corporation → (TransCanada Corporation)

On February 22, 2007, the El Paso Corporation sold the ANR Company subsidiary to TransCanada American Investments LTD which is a wholly-owned subsidiary of the TransCanada Corporation. (*Id*. at ¶19). After TransCanada acquired the ANR subsidiary from El Paso in 2007, TransCanada did *not* move the benefits that the ANR employees had previously accrued under the

El Paso Plan to its own Retirement Plan, but instead provided that its Plan would provide future retirement income for "credited service earned on and after January 1, 2008, with "any benefit that you earned under the former El Paso Corporation Pension Plan" being paid in addition to the post-January 1, 2008 benefit. (*Id*. at ¶32). So the benefits that ANR employees had previously accrued under the El Paso Plan continued to be governed by El Paso's Pension Plan even after the ANR Company subsidiary was acquired by TransCanada Corporation.

### 4. El Paso Corporation → Kinder Morgan

On May 2012, the El Paso Corporation was acquired by Kinder Morgan, Inc.; as a result of that acquisition, El Paso was merged into Kinder Morgan. (*Id*. at ¶20). When the El Paso Corporation was acquired by Kinder Morgan in 2012, Kinder Morgan merged El Paso's Pension Plan into Kinder Morgan's with Appendix X (also referred to as the "Coastal Appendix") to reflect special rules for employees of the Coastal Corporation and its subsidiaries, including the ANR employees. (*Id*. at ¶35).

### B. The Evolution of the Pension Plan

The ANR Company had a pension plan which was established in 1960 and merged into the Coastal Corporation Pension Plan in December 1986. The ANR Plan's benefit formula was based on 2% of final average pay for credited service up to 30 years. The plan offered early retirement benefits for employees who attained age 55 with ten years of service with no reduction for retirement at age 62. (*Id*. at ¶21).

Then the Coastal Corporation acquired ANR Company. The Coastal Corporation had a pension plan which was established in 1967. (*Id*. at ¶22). The Coastal Corporation's benefit formula was 2% of final pay times years of credited service up to a maximum of 30 years, with a Social Security offset. (*Id*.) The plan offered early retirement benefits for employees who attained

3

age 55 with five years of service. (*Id*.) As explained above, when ANR was acquired by Coastal Corporation, Coastal amended its pension plan to provide for a "grandfather" of the ANR benefit formula so that ANR employees could earn benefits under the Coastal Plan's benefit formula and receive the higher of the two pension benefits when all was said and done.

Then the El Paso Corporation acquired the Coastal Corporation. The El Paso Corporation had a pension plan which was established in 1992. (*Id*. at ¶23). The El Paso Corporation plan's benefit formula was also a 2% of final pay formula. (*Id*.) The plan also offered early retirement benefits for employees who attained age 55 with five years of service. (*Id*.) El Paso converted its defined benefit plan to a cash balance formula in 1997, but provided a multi-year transition benefit (from January 1, 1997 to December 31, 2001) under its defined benefit formula that continued to provide the operative benefit for many participants. (*Id*.). And when El Paso acquired Coastal (and the ANR subsidiary) in 2001, it merged the Coastal Corporation Pension Plan with its own Plan and moved the Coastal Plan participants, including the ANR employees, under the El Paso Plan's formula with their transition period running from April 1, 2001 to March 31, 2006. (*Id*. at ¶29).

### 1. The 2007 Notice of the Ninth Amendment

The first significant change to the ANR pension plan occurred on February 2007, when El Paso sold the ANR subsidiary to TransCanada Corporation. (*Id*. at ¶33). Before the sale of ANR, section 3.2(b) of the El Paso Plan provided that a participant was eligible for an early retirement benefit if he or she "terminates employment after attaining age 55 and completing ten (10) Years of Credited Service." (Id. at ¶33).

But on February 14, 2007, El Paso sent out a notice to all ANR employees alerting them that as of the February 28, 2022 closing date of the sale of the ANR subsidiary to TransCanada Corporation, things would be different:

4

> "Notwithstanding any other Plan term to the contrary, a Participant who ... is an Employee of ANR Pipeline Company or any other Affiliated Company, on the date on which ANR Pipeline Company ceases to be an Affiliated Company ... shall be deemed to have terminated employment after attaining age 55 for purposes of determining whether the Participant is entitled to an Early Retirement Benefit in lieu of a Vested Termination Benefit, but not for determining the Participant's earliest Early Retirement Date ... provided that the Participant is at least age 53 and has not yet attained age 55 on the Closing Date."

(*Id*. at ¶33). That is to say, El Paso was ending its general policy of granting early retirement eligibility to employees who had turned 55 and completed ten years of service, but was allowing employees who were already 53 at the time of the Notice to keep their early retirement benefits. The 2007 Notice about the Ninth Amendment said nothing about the Pension Plan provision under which benefits were unreduced at age 62. (*Id*.)

### 2. The Kinder Morgan Merger

After Kinder Morgan acquired the El Paso Corporation in 2012, the El Paso Pension Plan was merged into the Kinder Morgan Retirement Plan effective December 31, 2012. (*Id*. at ¶3). On December 4, 2017 Kinder Morgan Retirement Plan A and Plan B replaced the previous Kinder Morgan Retirement Plan. (*Id*. at 4). Both Plan A and Plan B cover vested participants who were no longer employed by Kinder Morgan on January 1, 2017; the only difference between the two plans is that Plan B covers participants whose accrued benefits had an estimated present value of *less than $150,000* while Plan A covers participants whose benefits are valued at *more than $150,000*. (*Id*.) Kinder Morgan is the plan sponsor for Kinder Morgan Retirement Plan A and Kinder Morgan Retirement Plan B, and it is responsible for maintaining Kinder Morgan Retirement Plans A and Plan B in compliance with ERISA and for appointing and removing all of the fiduciaries with discretionary responsibilities related to the retirement plan. (*Id*. at ¶3).

The Kinder Morgan Merger resulted in another controversial change to the Pension Plan. As explained below, the fraction used to calculate beneficiaries' post retirement monthly benefits was changed in a crucial way.

It is best to illustrate the change to the fraction using a real life example: Mr. Pedersen worked for ANR for 26.75 years before he retired. (Compl. at ¶52). Under the pre-existing plan, 2% of his annual pay in his final year of employment had he worked for ANR for the maximum creditable 30 years is $4,127. Because he worked for ANR for less than the maximum creditable 30 years, the $4,127 is multiplied by a fraction that accounts for the years Mr. Pedersen actually worked for ANR. The numerator (top number) of the fraction is the 26.75 years he worked for ANR. The denominator (bottom number) of the fraction is the number that is in dispute in this matter. Mr. Pedersen argues that the denominator should be 30, because 30 years is the maximum number of credited years of service according to the Plan. So if Mr. Pedersen's preferred fraction is applied, one multiplies $4,127 x (26.75/30) = $3,679.98 in monthly benefits. But Kinder Morgan uses a different, larger denominator, which results in a decrease to Mr. Pedersen's monthly pay. Kinder Morgan does not limit the denominator to the maximum 30 years of credited service; instead, Kinder Morgan counts the years between Mr. Pedersen's year of hire and the year Mr. Pedersen turns 65. Mr. Pedersen started at ANR in 1979 and will not turn 65 until November 2022, so Kinder Morgan's denominator is 43.4167 years (accounting for the 43 years between 1979 and 2022). So, when Kinder Morgan's formula is applied, one multiplies $4,127 x (26.75/43.4167) = $2542.79 in monthly benefits. Mr. Pedersen gets a significantly lower monthly benefit when Kinder Morgan's fraction is used.

### C. The Present Lawsuit

### 1. The Named Plaintiffs' claims

Therefore, in Claim I, plaintiffs argue that by applying a "fraction" that uses 43.4167 years in the "denominator" rather than the maximum of 30 years used in the normal retirement benefit formula, Kinder Morgan "backloaded" Mr. Pedersen's "Part 1" retirement benefit of $4,127.08 to later years of service. (Doc. 18 at ¶¶41-84). Mr. Pedersen could not accrue the full $4,127.08 unless he worked for an additional 13.4167 years beyond the 30 years on which the $4,127.08 is calculated. (*Id.*)

Plaintiffs' Claim II is based on the same set of facts as Claim I except that in Claim II plaintiffs focus on the Plan language describing the denominator. (*Id.* at ¶¶85-92). The original plan language, captured in 5.1(c) of the Coastal Plan limited the denominator to a maximum of thirty years. (*Id.* at ¶88). The new Plan language, found in an Appendix to the Kinder Morgan Plan, removed the denominator's thirty-year limit. (*Id.* at ¶89). Therefore, plaintiffs claim that the amendment to the Plan violates ERISA's "anti-cutback" protection, which provides that the "accrued benefit" of an employee participating in a company retirement plan like El Paso's "may not be decreased by an amendment of the plan." ERISA §204(g)(1), 29 U.S.C. 1054(g)(1).

In Claim III, plaintiffs allege that Kinder Morgan's Summary Plan Descriptions failed to alert beneficiaries of the fact that Kinder Morgan's larger denominator would likely decrease their monthly benefits if they started working at ANR before they turned 35 (because the denominator is calculated by counting the years between the beneficiary's age when hired and the year the beneficiary turns 65). (Doc. 18 at ¶¶93-102). Therefore, plaintiffs claim defendants ran afoul of ERISA §102(a), 29 U.S.C. 1022(a), which requires disclosures of the plan's terms "written in a manner calculated to be understood by the average plan participant." (*Id.*)

In Claim IV, plaintiffs allege that the above-mentioned 2007 Notice of the Ninth Amendment—which ended the Plan's policy granting early retirement eligibility to employees who had turned 55 and completed ten years of service, but allowed employees who were already 53 to keep their early retirement benefits—also violated ERISA's anti-cutback" protection. (*Id.* at ¶¶103-133). ERISA §204(g)(2) provides that the "accrued benefit" of an employee participating in a company retirement plan like El Paso's "may not be decreased by an amendment of the plan." ERISA §204(g)(1), 29 U.S.C. 1054(g)(1). (*Id.* at ¶103).

In Claim V, plaintiffs argue in the alternative, that even if plaintiffs Pedersen and Leutloff (who were not 53 years old when the 2007 Notice came out) are not entitled to early retirement benefits, the language of the Plan still provides that they are eligible for an unreduced retirement benefit at age 62. (*Id.* at ¶134). Plaintiffs point to language in Section 15 of Appendix L-X to the Kinder Morgan Retirement Plan. The Section provides that for "a Participant who was an employee of a participating employer in the [ANR Plan] prior to December 1, 1986," the benefit "shall be the amount determined under Section 4.1(c)(i) [the "Coastal Transition Benefit"] plus the amount equal to 0.3% of Final Average Monthly Earnings multiplied by years of credited service under the ANR Plan prior to 1986. (*Id.* at ¶138). Indeed, unreduced benefits at age 62 were provided to former ANR employees whose benefits vested from 2007 to mid-2018. (*Id.* at ¶142C). But now, Kinder Morgan asserts that those unreduced benefits were the result of a calculation error; Kinder Morgan's interpretation of the Section 15 Plan language is that the only portion of the monthly payment that is unreduced is the 0.3% of Final Average Monthly Earnings multiplied by years of credited service under the ANR Plan prior to 1986. (*Id.* at ¶146). The rest of the monthly earnings, Kinder Morgan insists, are subject to a "Vested Termination Reduction Factor" of 0.7142—which means that beneficiaries will only receive 71.42%. (*Id.* at ¶135.) Plaintiffs claim

that Kinder Morgan's interpretation of the Plan language is incorrect, and is a violation of fiduciary duties.

And finally, Claim VI takes issue with the methods Kinder Morgan uses to calculate the just-mentioned "Vested Termination Reduction Factor" of 0.7142. (*Id*. at ¶¶164-180). Sections 1.3 and 4.5 of the Kinder Morgan Retirement Plan provide that the "GAM83 mortality table and an 8% interest rate" shall be used to actuarially reduce the vested termination benefits of plan participants who retire before they turn 62. (*Id*. at ¶167). Plaintiffs argue that the GAM83 mortality table and 8% interest rate are outdated and that continued use of this "outdated mortality table and old interest rate (when interest rates are currently below 4%)" produces a retirement benefit for Mr. Pedersen at age 62 that is equal to only 71.4% of the benefit at age 65. (*Id*. at 169). Plaintiffs argue that use of those actuarial assumptions violates ERISA §204(c)(3)'s requirement that early retirement benefits provide at least "actuarially equivalent" benefits to those offered at normal retirement age. (*Id*.)

### 2. The Class Action and Requested Relief

Named plaintiff Curtis Pedersen is a participant in the Kinder Morgan Retirement Plan A. (*Id*. at ¶1). He was born in November 1957 and worked for the ANR Company from June 1979, when he was 21, until November 2015 when he was age 58. (*Id*.) Mr. Pedersen reached age 62 in November 2019 and commenced his retirement benefits under Plan A on December 1, 2019. (Id.) A detailed calculation that Kinder Morgan provided Curtis Pedersen on October 11, 2019, showed that he is entitled to $1,933.69, which represents 52.5% of the $3,679.98 monthly retirement benefits that Mr. Pedersen believes he is due according to the terms of the Pension Plan. (*Id*. at ¶36).

9

Named plaintiff Beverly Leutloff is a participant in the Kinder Morgan Retirement Plan A. (*Id*. at ¶2). Ms. Leutloff was born in November 1958 and has worked for the ANR Company from March 1978 when she was age 19 until the present. Ms. Leutloff reached age 62 in November 2020, but has not commenced her retirement benefits under Plan A because Kinder Morgan's Claims Administrator denied that she was eligible for "unreduced" retirement benefits at age 62. (*Id*.) She wants this lawsuit to be sorted out before she accepts benefits she believes are too low.

Plaintiffs claim that under ERISA, the Kinder Morgan Retirement Plans A & B are required to preserve all accrued benefits from previous retirement plans. Pointing to their own reduced benefits as evidence, plaintiffs allege that key Plan terms have been "silently dropped, reinterpreted, revised, and cut back." (*Id*. at 2).

Plaintiffs bring claims on behalf of themselves and on behalf of a proposed class (encapsulating more than 10,000 members) defined as

> any and all persons who have participated in the Kinder Morgan Retirement Plan
> A or Plan B who:
> (1) Are current or former employees of the ANR Company, or for Claims I - III the
> Coastal Corporation, and
> (2) Participated in the El Paso Pension Plan after El Paso acquired the Coastal
> Corporation in 2001.

(*Id*. at ¶¶12-13.)

Plaintiffs ask this Court to render the following forms of relief:

- Declare that in accordance with ERISA's statutory rules and the terms of the Kinder Morgan Retirement Plan and its Appendices, Curtis Pedersen and Beverly Leutloff and all others similarly-situated are entitled to retirement benefits calculated with a "fraction" where the denominator is no more than the maximum of 30 years that can be attained under the Plan.
- Declare that ERISA and the terms of the Plan require that the named Plaintiffs and all others similarly-situated have the right to the early retirement benefits provided under the El Paso Plan including that benefits are "unreduced" for commencement after they reach age 62.

- Enjoin the Defendants to calculate the amount of participants' retirement benefits and their benefits at age 62 and earlier retirement ages in accordance with those declarations and take all necessary steps to give full effect to those declarations and injunctions and fully account for the provision of that relief to Pedersen, Leutloff and all others similarly-situated, including providing past due benefits.
- Order the Defendants to pay interest on past due back payments at no less than the rates of return realized on the Defendant Kinder Morgan, Inc. and the Defendant Kinder Morgan Retirement Plan's equity investments over the same period.
- Order the Defendants to pay attorneys' fees and expenses.
- Award such other equitable and remedial relief as the Court deems appropriate to ensure receipt of all retirement benefits required to give full effect to the Court's declarations and injunction.

(*Id*. at 76-77).

## II.   DISCUSSION

### A.   ERISA Section 502(a)(3) v.s. ERISA Section 502(a)(1)(B)

Defendants argue that to the extent plaintiffs are bringing their claims under ERISA Section 502(a)(3) instead of 502(a)(1)(B), plaintiffs' claims must be dismissed.

#### 1.   The difference between 502(a)(3) and 502(a)(1)(B)

Under Section 502(a)(1)(B), a plan participant or beneficiary may assert a claim to recover benefits due under the terms of a plan, to enforce rights under the terms of a plan, or to clarify rights to future plan benefits. 29 U.S.C. § 1132(a)(1)(B). The remedy for claimants under Section 502(a)(1)(B) is payment of benefits or a declaration of rights to future benefits. Another remedial provision, Section 502(a)(3), provides in relevant part that a benefit plan participant or beneficiary may bring an action to obtain "appropriate equitable relief" to redress violations of provisions of ERISA or the benefit plan or to enforce any provisions of ERISA or the benefit plan. 29 U.S.C. § 1132(a)(3). Section 502(a)(3) is a "catchall provision' that acts as a safety net, offering appropriate equitable relief for injuries caused by violations that [Section 502 of ERISA] does not remedy." *Best v. Exxon Mobil Corp*., No. Civ. A. H–9–0625, 2010 WL 1169984, at *11 (S.D. Tex. Mar. 23, 2010) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 511-12 (1996)).

The reason defendants are so keen to prevent plaintiffs from bringing claims under Section 502(a)(3) as opposed to 502(a)(1)(B) is because the remedial scheme for claims brought under 502(a)(1)(B) severely limits discovery. Claims for plan benefits under Section 502(a)(1)(b) typically proceed with little to no discovery beyond the administrative record. *See Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001) ("[A] district court, in most instances, is limited to the administrative record when it reviews an administrator's determination.") (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298-99 (5th Cir. 1999)). In addition, "[i]t is settled law that if a benefits plan grants the administrator discretionary authority to determine eligibility for coverage [under the plan], a district court reviewing those determinations must use an abuse of discretion standard." *Quality Infusion Care, Inc. v. Aetna Life Ins. Co.*, No. H-05-2929, 2006 WL 3487248 at *3 (S.D. Tex. Dec. 1, 2006) (Ellison, J.), *aff'd*, 257 F. App'x 735 (5th Cir. 2007). In contrast, claims brought under 502(a)(3) are not typically reviewed for abuse of discretion and do not have the same limitations on discovery and, therefore, can result in much more costly and time-consuming litigation.

## 2.   Whether plaintiffs can bring 502(a)(3) claims

Since 2018, the law has been clear in the Fifth Circuit that that "[a] claimant whose injury creates a cause of action under ERISA § 502(a)(1)(B) may not proceed with a claim under ERISA § 502(a)(3)." *Manuel v. Turner Indus. Grp., L.L.C.,* 905 F.3d 859, 865 (5th Cir. 2018)(quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.,* 892 F.3d 719, 733–34 (5th Cir. 2018)); *see also Todd v. Aetna Life Ins. Co.*, No. 3:19-cv-699, 2021 WL 4497488, at *3 (S.D. Miss. Sept. 30, 2021) ("The law is clear in  the Fifth Circuit. If Plaintiff has a claim for benefits under § 1132(a)(1), she may not also pursue  a claim under § 1132(a)(3).").

Prior to the *Innova* decision in 2018, courts in the Fifth Circuit were split as to whether a plaintiff could simultaneously plead claims under Section 502(a)(1)(B) and Section 502(a)(3). *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,* 782 F. Supp. 2d 294, 309 (S.D. Tex. 2011) (Ellison, J.) (declining to dismiss Section 502(a)(3) claim where plaintiff simultaneously pled a Section 502(a)(1)(B) claim), *aff'd,* 781 F.3d 182 (5th Cir. 2015). *See also Harvey v. United of Omaha Life Ins. Co*., No. 6:20-cv-120, 2021 WL 465427, at *4 (E.D. Tex. Feb. 9, 2021) (discussing status of split among district courts in the Fifth Circuit prior to Innova decision). But *Innova* held that a plaintiff with "an adequate mechanism for redress under § 502(a)(1)(B) . . . may not simultaneously plead claims under § 502(a)(3)." *Innova,* 892 F.3d at 734.

Since *Innova*, district courts in the Fifth Circuit have consistently held that plaintiffs may not plead duplicative § 502(a)(1)(B) and § 502(a)(3) claims. *See, e.g., Harvey*, 2021 WL 465427, at *4 (finding that the plaintiff's citations "to opinions issued prior to *Innova* in which some courts permitted both claims to go forward at the motion-to-dismiss phase . . . [were] not persuasive" in light of "the Fifth Circuit's clear precedent.").

In response, plaintiffs first argue that all their claims except for Claim V are purely statutory—meaning that their claims are not concerned with ERISA § 502(a)(1)(B)'s simple interpretation of plan documents and payment of benefits. Continuing, plaintiffs point to *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) for the proposition that "there is . . . no option to bring statutory claims under ERISA §502(a)(1)(B). Instead, statutory claims . . . must be brought under ERISA §502(a)(3) to obtain the injunctive and other appropriate equitable relief that §502(a)(3) offers for redress of such violations." (Doc. 60 at 19).

The Fifth Circuit addressed *Amara's* implications in *Manuel v. Turner Indus. Grp., L.L.C.,* 905 F.3d 859, 864 (5th Cir. 2018), writing

"the Supreme Court has construed ERISA § 502(a)(1)(B) narrowly, pointing out that its plain language focuses on the ERISA "plan" itself. *See, e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 435–36, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). An ERISA plan is best thought of as a "written instrument" which includes the "basic terms and conditions" governing a set of benefits offered by an employer. *Id.* at 437, 131 S.Ct. 1866. Claims under ERISA § 502(a)(1)(B) are generally limited to actions "respect[ing] ... the interpretation of plan documents and the payment of claims." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

However, a narrow construal of 502(1)(B) does not automatically allow any plaintiffs who merely insist that their claims are statutory to proceed under 502(a)(3). Courts in the Fifth Circuit ". . . must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013). "[A] claimant whose *injury* creates a cause of action under [ERISA § 502(a)(1)(B) ] may not proceed with a claim under [ERISA § 502(a)(3) ]." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 733 (5th Cir. 2018) (emphasis added)(citation omitted). By looking at the underlying alleged injury, it is possible to determine whether a given claim is duplicative of a claim that could have been brought under ERISA § 502(a)(1)(B). So, for example, in *Innova* the Fifth Circuit held, while dismissing a claim under ERISA § 502(a)(3), that the plaintiff had "an adequate mechanism for redress under" ERISA § 502(a)(1)(B) for "fail[ure] to reimburse [the plaintiff] under the terms of [the] plan[ ]." *Id.* at 733–34.

ERISA 502(a)(1)(B) does not authorize a court to change the terms of a plan as it previously existed. *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). The statutory language speaks of "'*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)). The provision allows a court to look outside the plan's written language in deciding what those terms are, *i.e.,* what the language means. *Id.* (citing *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 377–379 (1999) (permitting the insurance terms of an ERISA-governed plan

14

to be interpreted in light of state insurance rules)). But the Supreme Court has "found nothing suggesting that the provision authorizes a court to alter those terms, at least not in present circumstances, where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy." *Id*. at 436. But ERISA 502(a)(3) authorizes a district court to reform the terms of a pension plan and enforce the terms of the reformed plan as a remedy similar to traditional equitable remedies of reformation of contract and equitable estoppel. *Id*. at 439.

So, to the extent plaintiffs' alleged injuries can be addressed by simply enforcing the terms of the Kinder Morgan Pension Plan, plaintiffs must bring such claims under 502(a)(1)(B). If plaintiffs attempt to bring such claims under 502(a)(3), this Court will dismiss them.

Plaintiffs attempt to bring all their claims except for Claim V under 502(a)(3). The Court will briefly address each claim, focusing on the substance of the relief requested, dismissing any putative 502(a)(3) claims that call for interpretation and enforcement of the Kinder Morgan Plan as written.

### a. Claim I

Plaintiffs ask the Court to "interpret" the Kinder Morgan Plan's provisions so that the denominator in the fraction calculating participants' benefits is "limited to the maximum number of years of participation that the plan's normal retirement benefit formula credits." (Complaint at ¶84). Plaintiffs do not appear to be asking the court to amend the language Kinder Morgan Pension Plan, but to interpret and enforce it. Here, as in Innova, plaintiffs have "an adequate mechanism for redress under" ERISA § 502(a)(1)(B) for "fail[ure] to compensate [the plaintiff] under the terms of [the] plan[ ]." 892 F.3d at 733–34. **Therefore, the Court GRANTS defendants' motion for judgment on the pleadings as to Claim I.**

**b. Claim II**

Here, plaintiffs again point to the Kinder Morgan Plan language that removed the 30-year cap on the denominator, this time claiming that the change to the language violated ERISA's Anti-Cutback provisions. Here, plaintiffs' requested relief would require the Court to amend the Kinder Morgan Plan. (*See* Compl. at ¶92 "El Paso's amendment to the fraction cannot be fixed by changing the denominator back to the original provision, but making other changes to the fraction to achieve similar results.") **Therefore, the Court finds that Claim II can be brought under § 502(a)(3) and so DENIES defendants' motion for judgment on the pleadings as to this claim.**

**c. Claim III**

Here, plaintiffs claim that the Summary Plan Descriptions sent to plan participants were ambiguous. Plaintiffs' claim is not asking the Court to deal with the terms of the Plan at all. Instead, this claim attempts to obtain equitable relief for injuries caused by violations that [Section 502(a)(1)(B) of ERISA] does not remedy." *Best v. Exxon Mobil Corp.*, No. Civ. A. H–9–0625, 2010 WL 1169984, at *11 (S.D. Tex. Mar. 23, 2010) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 511-12 (1996)). **Therefore, the Court finds that Claim III can be brought under § 502(a)(3) and so DENIES defendants' motion for judgment on the pleadings as to this claim.**

**d. Claim IV**

Here, plaintiffs claim that the Ninth Amendment—which ended El Paso's policy under Section 3.2 of granting early retirement eligibility to employees who had turned 55 and completed ten years of service, but allowed employees who were already 53 and older to keep the previous early retirement benefits—violated ERISA's anti-cutback protection for early retirement benefits. (Compl. at ¶126). Interpretation and enforcement of the Kinder Morgan Plan's Ninth Amendment

would not address plaintiffs' claimed injury; therefore, Plaintiffs' requested relief would require the Court to amend the Kinder Morgan Plan. **Accordingly, the Court finds that Claim IV can be brought under 502(a)(3) and so DENIES defendants' motion for judgment on the pleadings as to this claim.**

### e. Claim V

Here, plaintiffs argue that Kinder Morgan's interpretation of the grandfather clause as only applying to the .3% of final average earnings multiplied by years of service is incorrect; plaintiffs insist that the plain language of Section 15 indicates that the grandfather clause applies to plaintiffs' full retirement benefits (which plaintiff claims is made up of the Coastal Transition Amount, plus the amount equal to 0.3% of final average earnings multiplied by years of service). (Compl. at ¶147). Since plaintiffs' requested relief here clearly asks the Court to interpret and enforce the Plan, this claim must be brought under 502(a)(1)(B). Plaintiffs bring this claim under both 502(a)(3) and 502(a)(1)(B). **Therefore, the Court GRANTS defendants' motion for judgment on the pleadings to the extent that plaintiffs bring Claim V under § 502(a)(3) and DENIES defendants' motion to the extent plaintiffs bring this claim under § 502(a)(1)(B).**

### f. Claim VI

Here, plaintiffs insist that the mortality table and interest rate the Kinder Morgan Plan uses to calculate the "Vested Termination Reduction Factor" is outdated and out of compliance with ERISA. Plaintiffs ask the Court to force defendants to amend the Kinder Morgan Pension Plan, using a 4% interest rate instead of an 8% interest rate, and using the mortality table currently prescribed by ERISA §205(g)(3). (Compl. ¶180) **Therefore, the Court finds that Claim VI can be brought under 502(a)(3) and so DENIES defendants' motion for judgment on the pleadings as to this claim.**

**B.  Whether Claims III, IV, and VI should be dismissed notwithstanding 502(a)(3)**

**1.  Whether Claims IV and VI are untimely**

A motion to dismiss on statute of limitations grounds may be granted "only if it is apparent from the face of the complaint that the claim is time-barred." *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 196 (5th Cir. 2021). The same is true for a motion for judgment on the pleadings. *See Phillips v. City of Dallas*, 781 F.3d 772, 775 (5th Cir. 2015) (holding that a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standards applicable to motions to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6)).

ERISA does not include a statute of limitations for claims under Section 502(a)(3), so courts "look to state law for the most analogous cause of action." *N. Cypress Med. Ctr.*, 781 F.3d at 204. Under Texas law, the most analogous limitations period for the claims here is its four-year residual limitations period for suits other than the recovery of property. Tex. Civ. Prac. & Rem. Code § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.").

However, "[a]ccrual of ERISA claims is a question of 'federal common law,'" *Faciane v. Sun Life Assur. of Canada*, 931 F.3d 412, 418-21 (5th Cir. 2019). Accrual is a simple matter when a claim for benefits has been formally made and formally denied. *See, e.g.*, *Riley*, 744 F.3d at 244–45; *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005). To cover less-clear situations, circuit courts have applied a form of the standard federal discovery rule: a claim accrues when a party has enough information that it knows or reasonably should know of the injury or deprivation. *Faciane* 931 F.3d at 418 (relying on

*Osberg v. Foot Locker, Inc*., 862 F.3d 198, 210-211 (2d Cir. 2017), and *Kifafi*, 701 F.3d at 729). The district court in *Osberg* recognized that the issue is whether the "plaintiff had sufficient information to allow him to understand the basis for his claim" and that "[p]articipants cannot see what is hidden from them." 138 F.Supp.3d 517, 559-60 (S.D.N.Y. 2015), *aff'd,* 862 F.3d at 210-211. Because ERISA confers important rights and protects benefits on which people truly depend, courts guard against potential unfairness through a "case-by-case reasonableness inquiry," refusing to find clear repudiation when plan communications involve information or formulae too complex or obscure for the layperson to decipher. *Faciane* 931 F.3d at 419 (citing *Osberg* where "the Second Circuit determined that it would have required average plan participants to make 'a heroic chain of deductions' based on 'opaque guidance' to deduce a problem in their benefit calculations.")

As mentioned above, in Claim IV, plaintiffs allege that the above-mentioned 2007 Notice of the Ninth Amendment—which ended the Plan's policy granting early retirement eligibility to employees who had turned 55 and completed ten years of service, but allowed employees who were already 53 to keep their early retirement benefits—violated ERISA's anti-cutback" protection. And Claim VI takes issue with the methods Kinder Morgan uses to calculate the "Vested Termination Reduction Factor" of 0.7142—specifically the use of the GAM83 mortality table and an 8% interest rate.

Defendants argue that Claims IV and VI accrued "no later than when plaintiffs received the February 2007 Notice which stated bluntly that ANR would no longer participate in the El Paso Plan and that "no further service [for ANR Employees would] accrue for the purpose of satisfying the requirements for early retirement eligibility." (Doc. 56 at 18). In addition, defendans point out that the February 2007 Notice informed plaintiffs of the exact actuarial assumptions

employed by the Plan—the 1983 GAM and an 8% interest rate. (*See* doc 56 at Ex. E) (explaining that if participants did not satisfy the requirements for early retirement eligibility, their benefit would be reduced using "the actuarial factors, (8 percent interest and the male mortality rates under the 1983 Group Annuity Mortality Table, prior to age 65).")

Plaintiffs argue that the 2007 Notice was not a clear repudiation for two reasons: (1) less than one month after the 2007 Notice, plaintiffs were promised that notwithstanding the Notice, they would receive unreduced benefits at age 62 in emails from HR representatives and in an SPD from TransCanada (doc. 18 at ¶¶ 142-143); and (2) Kinder Morgan provided those unreduced benefits to former ANR employees who reached age 62 from 2007 until mid-2018, when it newly asserted that it had made a "calculation error" for all those years. (Doc. 60 at 6-7).

The Court finds that the conflicting communications and performances by Kinder Morgan in the months and years following the 2007 Notice delayed claim accrual until mid-2018, when defendants unequivocally stopped giving out unreduced benefits. *See Faciane* 931 F.3d at 418. **Therefore, the Court DENIES defendants' motion for judgment on the pleadings as to the untimeliness of Claims VI and IV.**

### 2. Whether the "plain language" of ERISA bars Claim III

Defendants assert that Claim III, which alleges that El Paso's and Kinder Morgan's summary plan descriptions (SPD) failed to disclose that the rate of benefit accrual for former Coastal and ANR employees was less than the basic 2% of pay rate promised in the plan and SPD, is barred by "the plain language of ERISA." (Doc. 56 at 19-20). However, defendants do not identify any plain language of ERISA that bans Claim III, and none exists.

ERISA §102(a) requires that an SPD "be written in a manner calculated to be understood by the average plan participant" and "be sufficiently accurate and comprehensive to reasonably

apprise such participants ... of their rights and obligations under the plan." In particular, the SPD must contain information on a plan's requirements respecting benefits and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." ERISA §102(b).

The SPD regulations elaborate on the details of these rules, requiring "a statement clearly identifying circumstances which may result in … denial, loss, forfeiture, ... [or] reduction ... of any benefits that a participant ... might otherwise reasonably expect the plan to provide on the basis of the description of benefits [in the SPD]." 29 C.F.R. §2520.102-3(l). The rules state that the "description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant" and "will usually require ... the use of clarifying examples and illustrations." 29 C.F.R. §2520.102-2(a), (b).

Claim III challenges the failure of El Paso and Kinder Morgan to understandably disclose how the fraction used to compute retirement benefits works. Plaintiffs allege that El Paso and Kinder Morgan both failed to explain that the participants hired by ANR or Coastal at relatively early ages do not earn the 2% of pay benefit promised in the SPD, but instead may earn as little as 1.33% of pay after a fraction based on the years between their date of hire and age 65 is applied. El Paso and Kinder Morgan thus failed to identify circumstances which may result in denial or loss of benefits that the average plan participant might otherwise reasonably expect the plan to provide based on the description of a benefit formula of 2% of pay for up to 30 years.

Defendants cite to two district court cases which held that ERISA does not require disclosure of whether a participant's rate of benefit accrual declines with age. *See, Richards v. FleetBoston Fin. Corp.*, No. 3:04-cv-1638, 2006 WL 2092086, at *9 (D. Conn. July 24, 2006); see also *Register v. PNC Fin. Servs. Grp., Inc*., No. 04–CV–6097, 2005 WL 3120268, at *9 (E.D. Pa. Nov. 21, 2005). However, plaintiffs are not alleging that defendants failed to disclose that a

participant's rate of benefit accrual declines with age. Plaintiffs allege that defendants failed to disclose that employees who started working at ANR before the age of 35 will be subject to denominators larger than 30 (and will therefore earn less than the 2% of pay benefit promised in the SPD.Plaintiffs have pled a plausible violation of ERISA §102(a).

Therefore, the Court DENIES defendants' motion for judgment on the pleadings as to Claim III.

### 3. Whether the plain language of ERISA bars claim VI

As explained above, Claim VI takes issue with the actuarial assumptions Kinder Morgan uses to calculate the "Vested Termination Reduction Factor" of 0.7142—specifically the use of the GAM83 mortality table and an 8% interest rate. Plaintiffs allege that defendants' actuarial assumptions are outdated and thus run afoul of ERISA §204(c)(3). *See* 29 U.S.C. § 1054(c)(3) (providing that when a retirement benefit is "determined as an amount other than an annual benefit commencing at normal retirement age," "the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit.).

Defendants argue that since ERISA 204(c)(3) does not require plan sponsors to use *specific* actuarial assumptions when calculating retirement pension benefits, plaintiffs' claim necessarily fails. (Doc. 56 at 20). Defendants also point out that ERISA 204(c)(3) does not require that actuarial assumptions be updated, or that they even be reasonable. (*Id.*) Continuing, defendants identify other sections of ERISA where Congress required plan sponsors to use specific actuarial assumptions or reasonable assumptions. (*See* doc. 56 at 21). According to defendants, it is dispositive that Congress saw fit to include "reasonable" actuarial assumptions or the "applicable" mortality table and interest rate elsewhere, but not in Section 204(c). (*Id.* at 21).

In response, plaintiffs cite to eight recent district court decisions which have found that the actuarial assumptions used for benefit options must be reasonable:

*Torres v. Am. Airlines, Inc*., 416 F.Supp.3d 640, 650-651 (N.D. Tex. 2019), denying a motion to dismiss after finding that four sets of IRS regulations require the actuarial assumptions used for benefit options to be "reasonable," ruling:

> Discovery will reveal whether the benefits provided Plaintiffs under [various options] are the actuarial equivalent of the benefits they would have received under a Single Life Annuity]. The Court finds that Plaintiffs have alleged sufficiently that the benefits they received are not actuarially equivalent to what they would have received under an SLA.

Seven other district court decisions that have reached the same conclusion. The most recent, *Masten v. Metropolitan Life Ins. Co*., 543 F.Supp.3d 25, 35 (S.D.N.Y. 2021), holds that "free reign to fashion the assumptions used to calculate actuarial equivalence, would permit all kinds of mischief inconsistent with" "the protective purposes of ERISA." *Masten* applied the Second Circuit's decisions in *Esden v. Bank of Boston*, 229 F.3d 154, 164 (2000) ("If plans were free to determine their own assumptions and methodology, they could effectively eviscerate the protections provided by ERISA's requirement of 'actuarial equivalence'"), and *Laurent v. Pricewaterhouse Coopers LLP*, 794 F.3d 272, 286 (2d Cir. 2015) ("ERISA did not leave plans free to choose their own methodology for determining the actuarial equivalent of the accrued benefit"). As *Masten* further states, *Torres* and the other recent decisions on ERISA's "actuarial equivalent" requirement form a "robust consensus" of "persuasive" authority.

(Doc. 60 at 12; *see also, id.* at fn. 6).

The Court finds that ERISA §204(c)(3)'s actuarial equivalence requirement would be completely undermined if defendants were free to use whatever actuarial assumptions they want when calculating benefits.

**Therefore, the Court DENIES defendants' motion for judgment on the pleadings as to Claim VI.**

### C. Whether Kinder Morgan, Inc., the Individual Fiduciaries, and Plan B are proper defendants

#### 1. Kinder Morgan, Inc. and the Individual Fiduciaries

Defendants assert that Plaintiffs did not sue the "proper defendants" when they sued Kinder Morgan, Inc. and the individual members of Kinder Morgan's Fiduciary Committee (who defendants' counsel identified after the Complaint was filed) because Kinder Morgan and the individual members did not control administration of the Plan. (Doc. 56 at 16).

However, to the extent plaintiffs' claims are brought under 502(a)(3), defendants are out of luck. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 245-46 (2000), holds that an action under ERISA §502(a)(3) for injunctive and other appropriate equitable relief may be brought against both fiduciaries and nonfiduciaries who participate in a violation of ERISA: "ERISA §502(a)(3) makes no mention at all of which parties may be proper defendants." In *Bombardier Aero Emple. Welfare Ben. Plan v. Ferrer, Poirot & Wansbrough P.C*., 354 F.3d 348, 352-353 (5th Cir. 2003), this Circuit followed *Harris Trust* in holding that "§502(a)(3) liability is not dependent on an entity's status as a plan fiduciary."

**Therefore, the Court DENIES defendants'' motion for judgment on the pleadings as to 502(a)(3) claims against Kinder Morgan, Inc., and the individual fiduciaries.**

As for claims brought under 502(a)(1)(B), defendants point out that claims for denial of benefits may only be brought against "the party that controls administration of the plan." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc*., 703 F.3d 835, 844 (5th Cir. 2013). Defendants argue that plaintiffs must plead specific facts showing that defendants exercised "actual control over the claims process." *LifeCare*, 703 F.3d at 846. Here, Plaintiffs seek benefits under the Kinder Morgan Retirement Plan A. Defendants write that "the Plan document makes clear that the *Committee*

'shall be the Plan Administrator and shall have *sole authority and responsibility* for the administration of the Plan.'" (Doc. 56-1 at 79). Therefore, defendants argue, since it is the committee, and not Kinder Morgan or the individual committee members who control administration of the plan, plaintiffs cannot bring 502(a)(1)(B) claims against them.

The Court finds that Kinder Morgan, Inc., cannot be sued under 502(a)(1)(B) because the company did not control administration of the Plan. Plaintiffs counter that Kinder Morgan had authority to amend the Plan and to appoint members of the Committee. (Doc. 60 at 13). However, it remains the case that benefit determinations were indisputably delegated to the Committee.

**So the Court GRANTS defendants' motion for judgment on the pleadings as to § 502(a)(1)(B) claims against Kinder Morgan, Inc.**

However, the Court finds no meaningful distinction between the Committee as an entity and the committee members in their individual capacity. Because the "Fiduciary Committee" is not a "person" or entity for purposes of suit under ERISA §§3(9) or 502(d), it would create a huge gap in ERISA's protections to hold that suits cannot be brought against the individual members of the Committee. *Innova* further holds that "plausibility" does not require plaintiffs to know "details to which [they] have not access" or "facts which tend systemically to be in sole possession of defendants." 892 F.3d at 730.

**Therefore, the Court DENIES defendants' motion for judgment on the pleadings insofar as to 502(a)(1)(B) claims against individual committee members.**

**2. Claims relying on the fiduciary status of Kinder Morgan and Individual Committee Members**

Claim V of the Complaint includes an allegation that defendants breached their fiduciary duties owed under ERISA. The breach of fiduciary duty count is based on the allegation that

25

Plaintiffs were denied retirement benefits that were "unreduced" at age 62. (Doc. 18 at ¶134). Likewise, in Claim VI, Plaintiffs reference the fiduciary status of defendants in connection with allegations concerning ERISA's actuarial equivalence requirement. (*See id.* at ¶179.)

Defendants argue that neither Kinder Morgan nor the Individual Committee members are fiduciaries with respect to alleged denial of retirement benefits because neither exercises any discretionary authority or control with respect to the management or disposition of the benefits at issue. (Doc. 56 at 15).

Indeed, absent being designated in the plan document as the "named fiduciary," see 29 U.S.C. § 1102(a)(2), a person is a fiduciary only "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(3)(21). Accordingly, when a court evaluates allegations of a breach of fiduciary duty, "the threshold question is . . . whether that person was acting as a fiduciary . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002) ("[A] person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control.").

The Court finds that Kinder Morgan, Inc., cannot be sued as a fiduciary because the company did not exercise any discretionary authority or discretionary control respecting management of the Plan. Plaintiffs counter that Kinder Morgan "is the plan sponsor for the Kinder Morgan Retirement Plan A . . . and it is responsible for maintaining the Kinder Morgan Retirement Plan A . . . in compliance with ERISA and for appointing and removing all of the fiduciaries with discretionary responsibilities related to the retirement plan." (Doc. 18 at ¶ 3). However it remains the case that benefit determinations were indisputably delegated to the Committee.

**So, the Court GRANTS defendants' motion for judgment on the pleadings as to Kinder Morgan, Inc., being sued as a fiduciary.**

However, the Court again finds that where fiduciary status is concerned, there is no meaningful distinction between the Committee as an entity and the committee members in their individual capacity. Plaintiffs do not baldly claim that all members of the Fiduciary Committee are fiduciaries. Indeed, it is undisputed that the Fiduciary Committee was made up of the individual committee members and that the Committee exercised sole authority and responsibility for the administration of the Plan. Therefore, the Committee and its individual members exercised discretionary authority and discretionary control respecting management of the Plan sufficient to confer fiduciary status.

**Therefore, the Court DENIES defendants' motion for judgment on the pleadings insofar as to individual committee members being sued as fiduciaries.**

### 3. Plan B

Defendants argue that because named plaintiffs are both participants in Kinder Morgan Plan A, they do not have Article III standing to pursue claims related to Plan B because they have not suffered an injury-in-fact from any alleged mismanagement of that plan. (Doc. 56 at 11).

On December 4, 2017 Kinder Morgan Retirement Plan A and Plan B replaced the previous Kinder Morgan Retirement Plan. (*Id*. at 4). Both Plan A and Plan B cover vested participants who were no longer employed by Kinder Morgan on January 1, 2017; the only difference between the two plans is that Plan B covers participants whose accrued benefits had an estimated present value of *less than $150,000* while Plan A covers participants whose benefits are valued at *more than $150,000*. (*Id*.)

Plaintiffs point out that defendants' assertion that plaintiffs "did not participate" in "Plan B" is technically accurate, but misleading, because "Plan B" was spun off from "Plan A" just one month after "Plan A" was created and the only difference between the former ANR employees in "Plan A" and the former ANR employees who were spun off to "Plan B" is that the "estimated present value" of the accrued benefits of those who were spun off was "less than $150,000." (Doc. 18 at ¶4A). As Judge Goldsmith who presided over this case before its transfer already found, "As a result of a series of corporate mergers, the Named Plaintiffs' retirement benefits are now covered under Plan A, which is sponsored by Kinder Morgan, a company based in Houston, Texas" and "Plan B was established upon the transfer of certain assets and liabilities from Plan A." 2021 U.S. Dist. LEXIS 238069, 2021 WL 5757189 (E.D. Mich. Nov. 1, 2021). An SPD dated December 4, 2017 states that "Retirement Plan A provides the same benefits as those previously provided under the Kinder Morgan Retirement Plan," and notifies a defined group of participants that they are being "moved" from Plan A to Plan B "[o]n January 1, 2018" with no notice of any different benefits. Doc. 17-6 at ECF pages 6, 8.

In *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1104, 1106 (5th Cir. 1993), the Fifth Circuit certified a class that included "four different J.C. Penney pension plans." Because of a common statutory issue related to benefit accruals (similar to the benefit accrual issues presented in Claims I-III here), the plaintiff "met the commonality requirement, despite the fact that four different [J.C. Penney] pension plans are involved," and her claim was "typical" even though "much of the putative class is covered by plans other than the one applicable to [her]." *Accord, Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-24 (6th Cir. 1998) ("once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent putative class

28

of members of other plans to which he does not belong"; the question is whether the representative has "satisfied the criteria of Rule 23 with respect to the absent class members").

Here, as in *Forbush*, the participants who were spun off into Kinder Morgan's Plan B are subject to the same general practices and suffer from the same alleged injuries as those whom Kinder Morgan left in Plan A.

**Therefore, the Court DENIES defendants' motion for judgment on the pleadings as to plaintiffs' Article III standing to represent Plan B participants.**

### 4.  Improper group pleading

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Del Castillo v. PMI Holdings N. Am. Inc*., No. 4:14-CV-03435, 2016 WL 3745953, at *2 (S.D. Tex. July 13, 2016) (Ellison, J.) ("Rule 12(b)(6) must be read in conjunction with Rule 8(a) . . . ."). A plaintiff must give a defendant fair notice of the claims and the grounds upon which such relief is sought. *See Twombly*, 550 U.S. at 555. Moreover, a pleading must allege "factual information of some specificity as to each Defendant." *Dell, Inc. v. This Old Store, Inc*., No. H-07-0561, 2007 WL 1958609, at *3 (S.D. Tex. July 2, 2007). *See Del Castillo*, 2016 WL 3745953, at *13 (Ellison, J.)(granting motion to dismiss where plaintiff lumped together allegations against eight distinct defendants).

Here, defendants claim that plaintiffs' complaint improperly lumps all defendants together, and does not identify which defendants are alleged to have taken which complained-of-action. Defendants cite to a few illustrative examples:

> FAC ¶ 59: "Kinder Morgan's position [on the Plan's accrual formula] is predicated . . . on an unlawful reading of ERISA's fractional rule . . . ."

> FAC ¶ 93: "Defendants' position on the construction of the denominator to the Plan's accrual formula also leads to a violation of ERISA's disclosure rules."

FAC ¶ 126: "Kinder Morgan's application of El Paso's 'Ninth Amendment' to cut off Mr. Pedersen's ability to "grow into" early retirement eligibility with continuing ANR employment violates the anti-cutback protection in ERISA §204(g)(2), 29 U.S.C. 1054(g)(2)."

FAC ¶ 148: "[A]fter Defendants failed to recognize that this ANR Grandfather provision existed, they have attempted to construe it to be limited to the 0.3% portion of the grandfathered ANR benefit."

However, defendants' group pleading allegations fall flat for three reasons: (1) it is undisputed that the Committee had the sole authority and responsibility for administration of the plan; (2) the group pleading allegation appear to be a motion for a "more definite statement," which defendants should have filed under Rule 12(e) before the responsive pleading; and (3) defendants' citation to this Court's ruling in *Del Castillo* is unpersuasive because *Del Castillo* is about "lumping together ... distinct corporate entities," *id.* at *13; it does not bear on the fiduciary responsibilities of the officers of a single company who are all serve as members of a Fiduciary Committee.

**Therefore, the Court DENIES defendants' motion for judgment on the pleadings as to improper group pleading.**

## III. CONCLUSION

For the reasons described above and as stated on the record at the July 21, 2022 hearing, the Court now **GRANTS** Defendant's Motion for Judgment on the Pleadings as to Claim I and Claim V to the extent plaintiff seeks to bring them under 502(a)(3); **GRANTS** Defendant's Motion as to § 502(a)(1)(B) claims brought against Kinder Morgan, In.; **GRANTS** Defendant's Motion as to Kinder Morgan, Inc., being sued as a fiduciary**;** and **DENIES** Defendants' Motion in all other respects.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 12th day of August, 2022.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE