United States District Court
Southern District of Texas

**ENTERED**

November 02, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CURTIS T. PEDERSEN, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | CASE NO. 4:21-CV-3590 |
| v. | § | |
| | § | |
| KINDER MORGAN, INC., *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for a Protective Order Preventing Plaintiffs from Deposing Bethany Bacci, Esq., ECF No. 140, and Motion for a Protective Order Preventing Plaintiffs from Deposing Norma Ortega and Eddie Ammons, ECF No. 141. Plaintiffs filed responses. ECF Nos. 146, 147. Defendants filed replies. ECF Nos. 153, 158. The Court denies both motions because Defendants have not established good cause for a protective order. Each of these three witnesses possess unique information and knowledge relevant to Plaintiffs' claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B) and (a)(3) ("§ 502 (a)(1)(B) and (a)(3)).

## I.    BACKGROUND.

This is an ERISA matter.[1] Plaintiffs bring six separate claims.

---

[1] The Court provided a detailed and thorough recitation of the operative facts in the Amended

Earlier in the litigation, Defendants filed a motion for judgment on the pleadings seeking to limit Plaintiffs' ability to bring claims under § 502(a)(3). Relevant to discovery, Judge Ellison stated in the Memorandum and Order ("M&O") addressing Defendants' motion:

> The reason defendants are so keen to prevent plaintiffs from bringing claims under Section 502(a)(3) as opposed to 502(a)(1)(B) is because the remedial scheme for claims brought under 502(a)(1)(B) severely limits discovery. . .. In contrast, claims brought under 502(a)(3) are not typically reviewed solely for abuse of discretion and do not have the same limitations on discovery and, therefore, can result in much more costly and time-consuming litigation.

M&O, ECF No. 77 at 12. In deciding the motion, Judge Ellison permitted four of Plaintiffs' six claims to proceed under § 502(a)(3) and its less restrictive discovery procedures.

In Claim I under § 502(a)(1)(B), "Plaintiffs ask the Court to 'interpret' the Kinder Morgan Plan's provisions so that the denominator in the fraction calculating participants' benefits is limited to the maximum number of years of participation that the plan's normal retirement benefit formula credits." *Id.* at 15 (cleaned up). In Claim II under § 502(a)(3), Plaintiffs ask the Court to amend the Plan, and "point to the Kinder Morgan Plan language that removed the 30-year cap on the denominator, this time claiming that the change to the language violated ERISA's Anti-Cutback

---

Memorandum and Order addressing Defendants' Motion for Judgment on the Pleadings, ECF No. 77. For brevity, the Court does not again recite the decades-long background between the parties but directs the parties to the above-mentioned factual recitation.

2

provisions." *Id.* at 16. In Claim III under § 502(a)(3), "Plaintiffs claim that the Summary Plan Descriptions ("SPDs") sent to plan participants were ambiguous," and do not ask the Court to deal with the terms of the Plan at all. *Id.* In Claim IV under §502(a)(3), Plaintiffs ask the Court to amend the Plan, and claim that an earlier amendment of the Plan, which ended a former employer's policy of granting early retirement eligibility to employees who had turned 55 and completed ten years of service, but allowed employees who were already 53 and older to keep the previous early retirements, violated ERISA's anti-cutback protection for early retirement benefits. *Id.* at 16–17. In Claim V under § 502(a)(1)(B), Plaintiffs ask the Court to interpret the Plan, and argue that Kinder Morgan's interpretation of the grandfather clause as only applying to the .3% of final average earnings multiplied by years of service is incorrect. *Id.* at 17. In Claim VI under § 502(a)(3), Plaintiffs "insist that the mortality table and interest rate the Kinder Morgan Plan uses to calculate the 'Vested Termination Reduction Factor' is outdated and out of compliance with ERISA," and ask the Court to amend the Plan, "using a 4% interest rate instead of an 8% interest rate, and using the mortality table currently prescribed by ERISA §205(g)(3)." *Id.*

Here, the Parties dispute whether Plaintiffs may depose Bethany Bacci, Norma Ortega, and Eddie Ammons. Defendants argue that these witnesses only possess knowledge relevant to Plaintiffs' § 502(a)(1)(B), but Plaintiffs have not

shown these witnesses' potential testimony relates to the administrative record or one of the exceptions to § 502(a)(1)(B)'s strict discovery procedures. Further, Defendants argue that even if permitted under ERISA, these depositions will be duplicative of other discovery already propounded in this case.

## II.   LEGAL STANDARD.

Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . forbidding the disclosure or discovery [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(A), (D). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). "A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection." *Curtis v. Metro. Life Ins. Co.*, No. 3:15-CV-2328-B, 2016 WL 687164, at *2 (N.D. Tex. Feb. 19, 2016) (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)). The Court has broad discretion in determining whether to grant a motion for a protective order. *Id.* (citing *Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985)).

"[D]iscovery regarding fiduciary duty claims under ERISA § 502(a)(3) should

not be limited to the administrative record and should, instead, be governed by the general scope of discovery provided by Rule 26(b)." *Manuel v. Turner Indus. Group, LLC*, No. CV 14-599-SDD-RLB, 2021 WL 1187072, at \*5 (M.D. La. Mar. 29, 2021) (collecting cases). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Under Rule 26(b)(2)(c), such discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2)(C).

However, under § 502(a)(1)(B), the Fifth Circuit "prohibits the admission of evidence to resolve the merits of the coverage determination—i.e. whether coverage should have been afforded under the plan—unless the evidence is in the administrative record." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). In addition to the administrative record, a claimant may question the: (1) completeness of the administrative record; (2) how plan administrators or fiduciaries have interpreted the plan in previous instances; (3) whether the plan

administrator complied with ERISA's procedural regulations; and (4) the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan. *See id.*

Notably, "[i]n this circuit, the burden is on the *party resisting discovery* to show how each discovery request is not relevant or is otherwise objectionable." *Revels v. Standard Ins. Co.*, 504 F. Supp. 3d 556, 563 (N.D. Tex. 2020) (emphasis added) (citing *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990); *Chavez v. Standard Ins. Co.*, No. 3:18-CV-2013-N, 2019 WL 1767000 (N.D. Tex. Apr. 22, 2019) (applying *McLeod* in the context of ERISA discovery)).

## III.   DEFENDANTS' MOTIONS ARE DENIED.

### A.   Plaintiffs May Depose Bethany Bacci.

Ms. Bethany Bacci is an attorney at Stoel Rives, LLP, who has "served as counsel to Kinder Morgan," ECF No. 140 at 2, and counsel for the Plan, ECF No. 147 at 5.[2]

Defendants argue that Plaintiffs should be prevented from deposing Bacci for two reasons. First, Defendants argue that Plaintiffs' deposition of Bacci seeks "discovery beyond the administrative record," and Plaintiffs have not established

---

[2] Plaintiffs provided financial documents that show Bacci's legal advice and services have been paid for "with plan assets." *Id.* at 5–6 (Plan's 2022 Form 5500 indicating Stoel Rives received compensation from Plan).

one of the four *Crosby* exceptions. *Id.* at 2. Second, Defendants argue that Plaintiffs' deposition of Bacci would be duplicative of discovery already conducted by Plaintiffs, namely the depositions of Mark Smith, the Claims Administrator for the Plan, and Chris Noonan, a Benefits Director who reports to Smith. Defendants also contend that even if the Court allows the deposition of Bacci, the Court should limit the deposition to "only topics that fall within the fiduciary exception to the attorney-client privilege—i.e., those that relate to advice concerning Plan administration that Ms. Bacci personally provided to Plan fiduciaries acting within the scope of their fiduciary duties." *Id.* at 13.[3] Plaintiffs assert that Bacci possesses information relevant to their § 502(a)(1)(B) and (a)(3) claims, namely in her possession of her predecessor's notes and her knowledge of Fiduciary Committee meetings concerning Plan administration.[4]

Indeed, Bacci has unique knowledge relevant to Plaintiffs' claims under § 502(a)(1)(B) and (a)(3). The Plan's Fiduciary Committee Minutes from February 13, 2020 show that Bacci "provided a thorough review of [Plaintiff

---

[3] The fiduciary exception only applies to "legal advice conveyed to a person acting in a fiduciary capacity to the plan beneficiaries and which is intended to assist in the administration of the ERISA plan." *Tolbert v. RBC Cap. Mkts., Corp.*, No. H-11-0107, 2012 WL 1067629, at *5 (S.D. Tex. Mar. 28, 2012). The exception does not apply to actions taken by fiduciaries of the plan that do not implicate their ERISA fiduciary duties, such as "conduct involving the design, modification, or amendment of an ERISA plan." *Id.*

[4] Bacci has been a partner at Stoel Rives for fifteen years, and in mid-2019, she took over responsibilities as the Plan's counsel from her former partner, Mimi Warner. ECF Nos. 147 at 5; 147-4 at 9.

Schmidgall's][5] appeal and materials circulated to the Committee, and responded to questions," and then the Committee directed Stoel Rives to draft a "preliminary letter regarding the appeal." ECF No. 147-6 at 3 (2/13/2020 Minutes). Fiduciary Committee Minutes from February 24, 2020 indicate that the Committee discussed and approved certain resolutions related to Schmidgall's appeal in reliance at least in part on Stoel Rives' letter. ECF No. 147-7 at 2 (2/24/2020 Minutes). The Plan's Fiduciary Committee Minutes from August 25, 2020, show that Bacci "provided a thorough review of [Plaintiff Pedersen's] appeal and materials circulated to the Committee, and responded to questions," then the Committee decided "[t]o make an adverse benefit determination on all claims raised . . . on behalf of Mr. Pedersen," and directed Stoel Rives to draft a letter reflecting the appeal denial. ECF No. 147-8 at 3 (8/25/2020 Minutes). Furthermore, correspondence from Bacci to Noonan indicates that she drafted letters to Plan participants addressing their potential review of benefits. ECF No. 147-12 (email correspondence from Bacci to Noonan, dated 3/16/2020). And finally, correspondence from Bacci to Steven Meisgeier, in-house counsel for Kinder Morgan, indicates that she is in possession of work notes from her predecessor, Mimi Warner, that address historic Plan interpretation. ECF No. 147-3 (email correspondence from Bacci to Meisgeier, dated 7/24/2020).[6]

---

[5] Randall Schmidgall is a member of Plaintiffs' "proposed 'ANR Grandfather' subclass," discussed in Claim V. ECF No. 147 at 2–3.

[6] Plaintiffs further assert that "[i]deally, both ERISA counsel would testify, but Ms. Warner has an

Based on this evidence, Bacci provided legal advice to the Plan concerning Plan administration and possesses information relevant to the Plan amendment that ended the policy of granting early retirement eligibility—information relevant to Plaintiffs' Claims I and V under § 502(a)(1)(B). Specifically, Bacci advised the Fiduciary Committee in their responsibilities to review and adopt Plan provisions for ERISA compliance. ECF No. 147-5 (Kinder Morgan's Plan Fiduciary Committee Charter). The record shows that Bacci has information and knowledge relevant to the completeness of the administrative record in deciding these claims, how plan administrators or fiduciaries have interpreted the Plan in previous instances, whether the Plan administrator complied with ERISA's procedural regulations, and whether there was a conflict of interest created by a plan administrator's dual role. *See Crosby*, 647 F.3d at 263.[7] Indeed, as the Plan's

---

"inactive" bar status in Washington, and according to what our process server heard, is living in France. Plaintiffs do not know if Ms. Warner and Ms. Bacci continue to be in communication, but Ms. Bacci has access to and utilizes Ms. Warner's notes and files as resources." ECF No. 147 at 6. Plaintiffs assert that "[p]rior to becoming a partner with Stoel Rives, Ms. Warner had worked as an attorney for the Mercer consulting firm and already had responsibilities for representing the El Paso Plan before the IRS on plan qualification issues (the El Paso Plan merged into the Kinder Morgan Plan in 2012). Discovery indicates that Ms. Bacci has possession of Ms. Warner's notes from her time with Mercer as well as with Stoel Rives." ECF No. 147 at 6. Plaintiffs aver that Warner's notes are relevant to all their claims. ECF No. 147 at 6.

[7] In their reply, Defendants ask the Court to limit any discovery related to the *Crosby* exceptions to written discovery, and cite to *Soileau & Associates, L.L.C. v. Louisiana Health Serv. & Indem. Co.*, No. CV 18-710, 2019 WL 11660190, at *1 (E.D. La. June 14, 2019), as support. The instant case is distinguishable—in *Soileau*, the court allowed written discovery on the *Crosby* exceptions as opposed to depositions because the plaintiffs had not propounded any written discovery in the case, whereas here, Plaintiffs have engaged in written discovery, which Plaintiffs contend has shown the need for these depositions.

counsel, the record demonstrates that Bacci was actively involved in each of the above exceptions and possesses a unique perspective of each. The Court does not find, as Defendants suggest, that Plaintiffs must produce sufficient proof or otherwise "prove the merits" of their claims to obtain discovery on the Crosby exceptions. *See Manuel*, 2021 WL 1187072, at *8 ("Plaintiff is not required to prove the merits of her procedural defect claim to obtain discovery on it."). Further, with possession of Warner's notes from Mercer, Bacci has information relevant to certain of Plaintiffs' § 502(a)(3) claims, which are not subject to ERISA's narrow discovery, but rather are governed by Rule 26.[8] As Plaintiffs noted, "[t]he qualification issues related to the El Paso Plan that Ms. Warner handled included compliance with the ERISA benefit accrual rules which are the subject of Claims I - III of the Amended Complaint, as well as the early retirement issues which are the subject of Claims IV - VI." ECF No. 147 at 6.

Moreover, the Court finds unconvincing Defendants' argument that this deposition is duplicative of other discovery in this case. Rather, it appears that as the Plan's counsel, Bacci has a unique perspective and knowledge of the relevant events in this matter. Notably, the Court has limited both sides to 10 depositions each without leave. ECF No. 145. Plaintiffs assert that they have only taken three

---

[8] It does not appear that Defendants contest this contention in their motion or reply. *See* ECF Nos. 140, 153.

depositions and scheduled two additional depositions, for a total of five depositions. ECF No. 147 at 4–5. Plaintiffs note that Defendants have tried to prevent their remaining five depositions, three of which are addressed here. *Id.* at 5. It is difficult to comprehend how ten depositions in this matter could lead to duplicative testimony worthy of the granting of a protective order.

And finally, the Court will not require Plaintiffs to submit a list of topics before deposing Bacci. Defendants are concerned about the attorney-client privilege. If Plaintiffs' questions call for privileged information, the proper course is to assert their privilege in response to a specific question or questions during the deposition and instruct Bacci to not answer. *See* Fed. R. Civ. P. 30(c)(2).

### B.    Plaintiffs May Depose Norma Ortega and Eddie Ammons.

Norma Ortega and Eddie Ammons are recently retired staff-level employees in Kinder Morgan's benefits department. ECF No. 141 at 2. Ortega was "an analyst in the benefits department who basically interface[d] with participants," but allegedly had "not had pension responsibilities for a number of years." *Id.* (cleaned up). Ammons "reported directly to Chris Noonan . . . and was responsible for administrative tasks such as gathering the documents to be considered by the committee and forwarding them to the committee by email." *Id.* (cleaned up).

Defendants first argue that Plaintiffs should be prevented from taking these depositions because Ortega and Ammons's "only potential connection to Plaintiffs'

claims concerns Claim V of the Amended Complaint, in which Plaintiffs assert that the 'ANR grandfather' benefit entitles former ANR employees to unreduced retirement benefits at age 62," and which Judge Ellison "limited to a claim for benefits under Section 502(a)(1)(B)." ECF No. 141 at 2–3. Second, Defendants argue that these depositions will be duplicative of other discovery already taken by Plaintiffs—namely, the depositions of Smith, Noonan, and Linda Carmarillo, the former Vice President of Compensation and Benefits, where Plaintiffs learned "that the role of these individuals was very limited (in the case of Ammons) and non existent (in the case of Ortega)." *Id.* at 3.

Plaintiffs respond that Defendants fail to establish good cause under Rule 26, and assert that because Ortega and Ammons had direct involvement in the Plan's administration for decades, "including the specific issues raised in [Plaintiffs' § 502(a)(3) claims]," and have "knowledge of documents that were not included in the administrative record," and "knowledge of Defendants' conflicts of interest and failure to follow the claims procedure regulations requiring consistency in benefit determinations," they possess discoverable information relevant to Plaintiffs' claims. ECF No. 146 at 2. Plaintiffs contend that Ortega "is likely to have knowledge related to Claims I, II, III, IV, and V." *Id.* at 7. Plaintiffs also argue that Ammons is likely to have personal knowledge of the specific issues raised in all or nearly all their claims. *Id.* at 14. Plaintiffs also assert that merely because both witnesses will

testify on a similar topic, does not mean that their testimony will be duplicative as they have an individual, unique perspective. *Id.* at 13.

The Court finds that Ammons and Ortega have unique knowledge relevant to Plaintiffs' claims under § 502(a)(1)(B) and (a)(3).

### 1. *Norma Ortega.*

Ortega's LinkedIn website states that her skills include "pension administration," and in her experience at Kinder Morgan, she: (1) "[a]dministered pension plan formulas and calculations, including final average pay and cash balance plans;" (2) "[w]orked on the analysis, transition and maintenance of pension . . . data and records due to mergers and acquisitions;" (3) "[was] responsible for the creation and presentation of benefits-related information for training and educational purposes;" and (4) "assist[ed] in the organization, designing and communication of benefits information and documents including [SPDs]. . . ." ECF No. 146-2 at 2. The record demonstrates that Ortega served on a "Pension Benefits Team," which was responsible for integrating the Coastal Corporation's pension plan into El Paso's pension plan, and while serving on the team, she and the other members were tasked with analyzing the Coastal grandfather provisions including the ANR Grandfather provision, changing the ANR benefit formula, and considering whether this change satisfied ERISA's anti-cutback rule. ECF Nos. 141-6 (El Paso/Coastal Pension Benefits Team Meetings Minutes from 2000); 146-3 (5/12/2000 El Paso/Coastal

Integration Minutes) ("The Pension Sub Team is reviewing the various Coastal pension plans with specific focus on identifying grandfathered formulas and protected rights and features of the plans.").

Given her experience and service on the Coastal/El Paso Pension Benefits Team, Ortega possesses knowledge relevant to Claims I and II, namely "whether the amended Coastal Transition Benefit formula is improperly interpreted to 'backload' benefit accruals inconsistently with its terms, the disclosures to participants, and representations about the formula's compliance with the accrual rules (Claim I), and whether the benefit accruals under the Coastal Transition Benefit included 'cutbacks' in their terms in violation of ERISA § 204(g) (Claim II)." ECF No. 146 at 7. Furthermore, given Ortega's experience with the Plan and specifically her experience "assist[ing] in the organization, designing and communication of benefits information and documents including [SPDs]," she has information relevant to Claim III, as to whether the SPDs were ambiguous, *i.e.* whether they disclosed that "anyone hired by ANR prior to age 35 would be accruing benefits at substantially less than the benefit formula of 2% of final average earnings." ECF No. 146 at 7–8. Judge Ellison permitted Claims II and III to proceed under § 502(a)(3) and its less restrictive discovery, and limited Claim I to § 502(a)(1)(B).

Ortega was also responsible for creating and presenting benefits-related information, and was specifically involved in the creation of a presentation about the

14

"freezing" of participants' grandfathered benefit and how participants would "be able to grow through Age and Service to Early Retirement Eligibility." *See* ECF No. 146-4 at 14–19 (draft presentation addressing the future of this policy). Ortega further communicated with participants about this policy:

> the Coastal Transition formula froze last year (3/31/06), and, with the sale of ANR pipeline, no further accruals will continue under the CBP formula (except for interest if someone does not take their pension benefit immediately) because participants will be terminated from El Paso. The 204(h) is not addressing specific grandfathered formula provisions . . . but in regards to eligible ANR participants (that were ppts of that plan 12/1/86) that terminate as term vested employees (before age 55) . . . they will be able to receive their unreduced age 65 benefit at age 62.

ECF No. 141-6 at 11–12 (Ortega's email correspondence). Based on the above, Ortega potentially has information relevant to Plaintiffs' Claim IV under § 502(a)(3) and Claim V under § 502(a)(1)(B), which address the end of an El Paso policy related to the termination of service's impact on early retirement and Kinder Morgan's treatment of the grandfather clause in calculating retirement benefits.

In sum, Ortega has extensive knowledge relevant to several of Plaintiffs' claims, including claims under both § 503(a)(3) and § 502(a)(1)(B). As for the claims under the more restrictive discovery provisions associated with § 502(a)(1)(B), Ortega may possess knowledge related to the completeness of the administrative record because the above-mentioned documents related to the analysis and amendment of the ANR Grandfather provision in the 2000 acquisition of Coastal

were not included in Pedersen's claims. ECF No. 146 at 2, 10, 11, 13. Further, Ortega's experience and background with the Plan is relevant as to whether the Plan fiduciaries complied with ERISA's procedural requirements and how the Plan terms have been previously interpreted. Accordingly, Plaintiffs may take Ortega's deposition.

### 2. *Eddie Ammons.*

Ammons' LinkedIn page identifies him as a Benefits Manager at Kinder Morgan for almost forty years. ECF No. 146-9. Ammons reported directly to Noonan and was responsible for collecting and distributing material that the Fiduciary Committee used to decide Pedersen's administrative appeal. ECF No. 141-4 at 41, lines 9–15 (Tr. Noonan Deposition).

Like Ortega, Ammons was a member of the "Pension Benefits Team" which integrated the Coastal pension plan into El Paso's pension plan, and so for the same reasons as Ortega, Ammons has knowledge and information relevant to Claims I, II, and III. Further, given his role at Kinder Morgan, taking minutes at the Fiduciary Committee meetings and compiling and distributing the materials the Fiduciary Committee utilized in determining claims, Ammons was involved in the claims process, which is relevant to Claims I, V, and VI. ECF Nos. 146-7 (Ammons' email notifying Committee of Pedersen's appeal); 146-10 (8/25/2020 Minutes from Fiduciary Committee which show Ammons facilitating the meeting).

Ammons was also actively involved in interacting with participants whose claims were not reviewed by the Fiduciary Committee. *See* ECF No. 146-11 (email correspondence between Plaintiff Leutloff and Ammons regarding Plan language). Additionally, Noonan testified in his deposition that he spoke with Smith and Ammons about any error in providing terminated vested ANR Grandfathered participants with an unreduced benefit at age 62, relevant to Claim V, ECF No. 146-6 at 106:13–18, and that he also discussed Ammons and outside counsel's review of the SPDs when Noonan decided the Plan's SPD disclosed that participants hired by ANR prior to age 35 would accrue benefits at less than 2% of final average earnings, relevant to Claim III, ECF No. 146-6 at 213:6-18.

Accordingly, Ammons possesses relevant information and knowledge related to Plaintiffs' § 502(a)(3) claims and § 502(a)(1)(B) claims. As to Plaintiffs' § 502(a)(1)(B) claims, the Court agrees with Plaintiffs that there is "no more appropriate witnesses to testify as to: (i) the completeness of the administrative record, (ii) how plan fiduciaries have interpreted plan terms in previous instances, and (iii) whether plan fiduciaries have complied with procedural regulations, including by ensuring that participants have been provided with a 'full and fair review' of their claims—than a relevant custodian in the chain who was personally responsible for investigating, compiling and distributing the materials plan fiduciaries would consider to decide claims, as well as involved in almost every

communication relevant to the claims process." ECF No. 146 at 15–16.

Additionally, like the Court's discussion related to Bacci, the Court is not convinced that these depositions are duplicative of other discovery in this case. Again, these individuals have unique perspectives and recollections of relevant events, and Plaintiffs have been granted ten depositions. ECF No. 145. Finally, Defendants have failed to show why the Court should limit the duration of Ammons and Ortega's depositions. As shown above, both witnesses have a considerable amount of information and knowledge about which they may be deposed.

## IV.   CONCLUSION

Therefore, it is **ORDERED** that Defendants' motions for protective orders, ECF Nos. 140 & 141, are **DENIED**. Plaintiffs are entitled to take the depositions of Bacci, Ortega, and Ammons, consistent with Rule 26 regarding Plaintiffs' § 502(a)(3) claims and *Crosby*'s exceptions regarding Plaintiffs' § 502(a)(1)(B) claims.

SIGNED at Houston, Texas, on November 2, 2023.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**

18