United States District Court
Southern District of Texas
**ENTERED**
February 08, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **CURTIS T PEDERSEN**, *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. 4:21-CV-03590** |
| | § | |
| **KINDER MORGAN INC**, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & ORDER

Two motions are pending before the Court: Plaintiffs' Motion for Class Certification (ECF No. 104) and Defendants' Motion to Strike (ECF No. 139). The Court held a telephonic hearing on Plaintiffs' Motion for Class Certification (ECF No. 104) on November 30, 2023. At the hearing, the Court took the Motion under advisement. On January 22, 2024, the Court ordered supplemental briefing to address additional questions. After considering the parties' briefs, oral argument, and applicable authority, the Court **GRANTS** Plaintiffs' Motion for Class Certification and **DENIES AS MOOT** Defendants' Motion to Strike. This Memorandum & Order documents the Court's rulings and reasoning.

## I.      BACKGROUND

### A.  The Mergers, Acquisitions, and Changes to Pension Plans

This case arises from allegedly unlawful changes to a pension plan brought on by a series of corporate mergers and acquisitions. The underlying facts are set out in detail in this Court's August 2022 Memorandum & Order, *Pedersen v. Kinder Morgan Inc*, 622 F.Supp.3d 520, 526

(S.D. Tex. 2022) (Ellison, J.).[1] The Court restates those facts here to the extent that they are relevant to the class certification analysis.

Plaintiffs take issue with pension plan changes that occurred as their employer, ANR, was impacted by a series of corporate mergers and acquisitions. The mergers proceeded as follows: (1) Coastal Corporation acquired the ANR Company in 1985; (2) El Paso acquired the Coastal Corporation in 2001; (3) El Paso sold ANR to TransCanada Corporation in 2007; and (4) Kinder Morgan acquired El Paso in 2012. *Pedersen*, 622 F.Supp.3d at 526–27.

Before it merged into the Coastal Corporation Pension Plan in 1986, ANR's pension plan calculated benefits based on 2% of final average pay for credited service up to 30 years. Pls.' Am. Compl. ¶ 21, ECF No. 18. It also offered early retirement benefits for employees who reached age 55 and had accumulated ten years of service, with no reduction for retirement at age 62. *Id.* The Coastal Corporation's pension plan also calculated benefits based on 2% of final average pay for credited service up to 30 years, with a Social Security offset, and early retirement benefits for employees who attained age 55 and had accumulated five years of service. *Id.* at ¶ 22. When Coastal acquired ANR, it amended its pension plan to create a legacy program[2] for ANR employees, such that ANR employees could earn retirement benefits under whichever plan's calculation was higher for the individual employee. *Id.* at ¶ 27.

---

[1] One notable change since the Court's August 2022 opinion is that named plaintiff Curtis Pedersen sadly passed away in November 2023. The Court subsequently substituted June A. Pedersen as Plaintiff. ECF No. 192. Beverly Leutloff remains the sole named plaintiff at this juncture.

[2] The parties' briefings and the Court's 2022 opinion use the term "ANR grandfather" and related language to refer to this amendment. The Court now declines to use this term due to its racist origins. *See Comstock v. Zoning Bd. of Appeals of Gloucester*, 98 Mass. App. Ct. 168, 173 n.11 (2020) ("Providing such protection commonly is known—in the case law and otherwise—as 'grandfathering.' We decline to use that term, however, because we acknowledge that it has racist origins. Specifically, the phrase 'grandfather clause' originally referred to provisions adopted by some States after the Civil War in an effort to disenfranchise African-American voters by requiring voters to pass literacy tests or meet other significant qualifications, while exempting from such requirements those who were descendants of men who were eligible to vote prior to 1867. *See* Webster's Third New International Dictionary 987 (2002) (definition of 'grandfather clause'); Benno C. Schmidt, Jr., *Principle and Prejudice: The Supreme Court and Race in the Progressive Era*, 82 COLUM. L. REV. 835 (1982).")). In this Memorandum and Order, the Court will instead use the terms "ANR legacy provision," "legacy ANR employees," or similar language where appropriate.

Then, when El Paso acquired Coastal, it merged Coastal's plan with its own. *Id.* at ¶ 24. Like ANR's and Coastal's, El Paso's benefit calculations were based upon 2% of final average pay, and like Coastal's, El Paso's plan offered early retirement benefits for employees who attained age 55 within five years of service. *Id.* at ¶ 23. Prior to its acquisition of Coastal, El Paso amended its pension plan to a cash balance formula, but it implemented a "transition period" in which plan participants could earn benefits under the old and new formulas, and receive the higher of the two amounts. *Id.* at ¶ 28. Upon El Paso's acquisition of Coastal, the sales agreement provided that El Paso would uphold the obligations of the Coastal and ANR retirement plans, and provide "substantially similar" employee benefits to Coastal and ANR employees. *Id.* at ¶ 24.

When TransCanada acquired ANR in 2007, it did not move the benefits that ANR employees had previously accrued under the El Paso plan to its own Retirement Plan. *Id.* at ¶ 32. Instead, the TransCanada Plan would provide retirement income for "credited service earned on and after January 1, 2008" in addition to "any benefit that [ANR employees] earned under the former El Paso Corporation Pension Plan." *Id.*

Simultaneously, when El Paso sold ANR to TransCanada in 2007, El Paso amended its plan to provide that El Paso would no longer grant early retirement eligibility to employees who had reached the age of 55 and completed ten years of service, though it allowed employees who were already 53 at the time of the notice keep their early retirement benefits. *See id.* at ¶ 33.

Later, when Kinder Morgan acquired El Paso, Kinder Morgan merged El Paso's pension plan into Kinder Morgan's. *Id.* at ¶ 35. When this happened, the plan calculations shifted in a significant way. The fraction used to calculate benefits used a denominator equal to the total years between employees' year of hire and the year they reached age 65, rather than limiting the denominator to a maximum of 30 years of service with which they could be credited. *Id.* at ¶ 52.

3

This change reduced the monthly benefits of all individuals who ANR hired before they reached age 35.

As mentioned above, ANR's original pension plan allowed participants to commence their plan at age 62 with no reduction for early retirement. *Id.* at ¶ 21. In emails with Kinder Morgan's Benefit Manager, Leutloff referred to this plan feature as "62 = 65" because it allowed participants who commence their plan at age 62 to receive the same monthly benefit as if they had commenced their plan at age 65. Ex. 13 to Pls.' Mot. to Certify Class 2, ECF No. 104-14; Pls.' Am. Compl. ¶ 21. Now, however, Kinder Morgan contends that only a small portion of the benefit is unreduced, and that any prior award of unreduced benefits at age 62 was due to a "calculation error." *Id.* at ¶ 146, 150. Rather than providing unreduced benefits at age 62, Kinder Morgan now applies a "Vested Terminated Reduction Factor" of 0.7142 to benefits awarded at age 62. *Id.* at ¶ 135. It calculated the 0.7142 figure by relying upon a "GAM83 mortality table and an 8% interest rate" cited in the original El Paso Plan. *Id.* at ¶¶ 167–68. Plaintiffs allege that no subsequent plan amendment modified the "62 = 65" provision, and that individuals employed by ANR in 1986 were therefore due unreduced benefits at age 62. *Id.* at ¶¶ 139–41.

### B.  Beverly Leutloff's Claims

Named plaintiff Beverly Leutloff's retirement benefits are covered under the Kinder Morgan Retirement Plan A.[3] Leutloff worked for the ANR Company from 1978, when she was 19, until her retirement at age 63. Pls.' Am. Compl. ¶ 2; Hr'g Tr. 32:1–4, Nov. 30, 2023, ECF No. 186 (noting that Leutloff retired at age 63). Because ANR hired her before age 35, when Kinder Morgan changed the denominator used in its benefits calculations, Leutloff's projected

---

[3] In its August 18, 2022 decision, this Court held that Leutloff was entitled to pursue claims related to Plan A and Plan B, as participants of both plans "are subject to the same general practices and suffer from the same alleged injuries." *Pedersen*, 622 F.Supp.3d at 542 (Ellison, J.).

monthly benefits award decreased. Additionally, Leutloff reached age 62 in November 2020, but at that point, Kinder Morgan's Claims Administrator informed her that she was ineligible for "unreduced" retirement benefits. *Id.* at ¶ 136. As a result, Leutloff decided not to commence her benefits, so as not to risk losing the full amount to which she believed she was entitled. *Id.* at ¶ 136. After pursuing a solution via Kinder Morgan's internal processes, she and the late Mr. Pedersen filed a class action complaint, bringing six claims. They later filed a Motion for Class Certification, which seeks certification of a general class and three subclasses, each of which correspond with a subset of Plaintiffs' claims.

### C. The Claims and Proposed Class

The proposed General Class definition is as follows: "any and all persons who participated in the Kinder Morgan Retirement Plan A or Plan B who:

1. Are current or former employees of the ANR Company or the Coastal Corporation, and

2. Participated in the El Paso Pension Plan after El Paso acquired the Coastal Corporation in 2001." Pls.' Mot. to Certify Class 24, ECF No. 104.

Plaintiffs seek appointment of named plaintiff Beverly Leutloff as class representative, and seek appointment of Stephen R. Bruce and Feinstein Doyle Payne & Kravec, LLC as class counsel. Pls.' Proposed Order 1, ECF No. 104-22.

Plaintiffs seek certification of a "Benefit Accrual Subclass" that corresponds with Claims I-III. Claims I-III are based upon the calculation changes made when Kinder Morgan acquired El Paso. Claim I alleges that Kinder Morgan's calculations violate the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1054, which restricts "backloading" benefit accruals to later years of participation in retirement plans, that is, concentrating the accrual of benefits in the employee's later years of service, when they are most likely to remain with the company until

retirement. Claim II alleges that the changed calculations violate ERISA's "anti-cutback" provision, which provides that the "accrued benefit" of an employee participating in a company retirement plan like El Paso's "may not be decreased by an amendment of the plan." § 1054(g)(1). Claim III alleges that Kinder Morgan's Summary Plan Descriptions failed to alert beneficiaries to the fact that the changed calculations would likely decrease monthly benefits of employees who started working at ANR before age 35. This failure, Plaintiffs allege, violates § 1022(a), which requires disclosures of the plan's terms to be "written in a manner calculated to be understood by the average plan participant."

The proposed Benefit Accrual Subclass definition is as follows: "all [Class Members] whose normal retirement benefit is greater than the accrued benefits that El Paso or Kinder Morgan has been offering." Pls.' Mot. to Certify Class 24.

Next, Plaintiffs seek certification of an "Early Retirement Benefit Subclass" for claims IV and V. Claim IV alleges that the 2007 Notice of the Ninth Amendment—which ended the Plan's policy of granting early retirement eligibility to employees who had turned 55 and completed five years of service, but allowed employees who were already 53 to keep their early retirement benefits—violated ERISA's "anti-cutback" protection, which "prohibit[s] employers from amending their plans to eliminate or decrease early retirement benefits or retirement-type subsidies." Pls.' Am. Compl. ¶ 103 (quoting *Costantino v. TRW*, 13 F.3d 969, 977–78 (6th Cir. 1994)). Claim V alleges that, in the alternative, even if employees like Leutloff—who was not 53 when then 2007 notice came out—are not entitled to early retirement benefits, the language of the Plan still provides that they are eligible for an unreduced retirement benefit at age 62. *Id.* at ¶ 134.

The proposed Early Retirement Benefit Subclass definition is as follows: all ANR employees who (i) may be due "unreduced" retirement benefits at age 62 under the ANR Legacy

6

provision in Section 15 of the Coastal Appendix (prescribing Section 4.1(c)(iv) of the plan), or (ii) would be eligible for the Coastal early retirement provision at age 55 and over if they had not been prevented from "growing into" eligibility by the "Ninth Amendment" to the Coastal Appendix which removed "ANR" from the list of "Affiliated Employers." Pls.' Mot. to Certify Class 24–25.

Lastly, Plaintiffs seek certification of an "Actuarial Equivalent Subclass" for claim VI. Claim VI alleges violations of § 1054(c)(3), which requires that, when a retirement benefit is "determined as an amount other than an annual benefit commencing at normal retirement age," "the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit." In other words, where a plan allows a participant to retire early with a reduced monthly benefit, the value of that reduced benefit must be equal to at least the actuarial equivalent of the benefit the participant would have received had they retired at age 65. Plaintiffs allege that Defendants' use of the GAM 83 mortality table and 8% interest rate violated this requirement, as the table and rate are "outdated" and therefore caused Leutloff and those similarly situated to receive retirement benefits that were not actuarially equivalent to those they would have received had they retired at age 65. Pls.' Am. Compl. ¶¶ 168–172. They further allege that, even if Leutloff and those similarly situated were "not due an unreduced early retirement benefit" and were "due only a vested termination benefit actuarially reduced for 'commencement prior to Normal Retirement Date,'" the reduction factor should be at least 0.81 (a figure that Plaintiffs calculated based upon reasonable interest rates and the mortality table prescribed by the Internal Revenue Code, 26 U.S.C. § 417(e)(3) and ERISA § 205(g)(3) at the time of filing), rather than Defendants' 0.7142 figure. Pls.' Am. Compl. at ¶ 180.

The proposed Actuarial Equivalent Subclass definition is as follows: "all former Coastal Corporation Employees, as well as former ANR employees, for whom Defendants determined or

would determine their 'actuarial equivalent' benefit amount before age 65 by using the GAM83

mortality table and an 8% interest rate." Pls.' Mot. to Certify Class 25.

## II.     LEGAL STANDARD

The requirements for class certification under Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable [numerosity];

(2) there are questions of law or fact common to the class [commonality];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

FED. R. CIV. P. 23(a). Plaintiffs, as the party seeking certification, bear the burden of

proving that the proposed class satisfies the requirements of Rule 23. *Wal–Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350 (2011). To prevail, Plaintiffs must make this showing with respect to

the general class and each subclass. *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017).

This burden is more than "a mere pleading standard"; rather, Plaintiffs "must affirmatively

demonstrate [their] compliance with the Rule." *Dukes*, 564 U.S. at 350 The trial court must conduct

a "rigorous analysis" of the prerequisites of Rule 23(a) before certifying a class. *Id.* at 350–51.

Such an analysis will often "overlap" with analysis of the merits of a plaintiff's underlying claim.

*Id.* at 351. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries

at the certification stage." *Amgen v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466

(2013). Merits questions may only be considered to the extent that they are relevant to determine

certification requirements. *Id.*

In addition to the requirements of Rule 23(a), Plaintiffs must meet the requirements of one

of the subparts under Rule 23(b). *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir.

2012). In this case, Plaintiffs seek certification under Rule 23(b)(2), but argue in the alternative that they meet the requirements of Rules 23(b)(1)(A) and 23(b)(3).

Rule 23(b)(2) allows certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(1)(A) allows certification if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Lastly, Rule 23(b)(3) certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

## III.   ANALYSIS

Defendants argue that the general class should not be certified because it is overbroad— that is, many general class members do not belong to any subclass and have suffered no injury. At the November 2023 hearing, Plaintiffs clarified that they did not intend to put forth a general class that contained any members who did not belong to a subclass. Hr'g Tr. 5:20–24, Nov. 30, 2023. Therefore, the Court shall define the general class such that it is limited to all persons who are members of at least one subclass.

Turning to the subclasses, Defendants argue that each subclass fails to meet Rule 23(a) and 23(b)'s requirements, and therefore cannot be certified. Naturally, Plaintiffs disagree at each turn. The Court shall first consider whether each subclass satisfies Rule 23(a)'s requirements, and will then assess whether the subclasses meet any of Rule 23(b)'s requirements.

### A. Benefit Accrual Subclass

#### 1. Numerosity

Rule 23(a)(1) requires that the proposed class is "so numerous that joinder of all members is impracticable." There are "no mechanical rules" courts apply to assess numerosity. *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022 (5th Cir. 1992), *on reh'g*, 53 F.3d 663 (5th Cir. 1994). Instead, courts focus "on the practicability of joining all class members individually." *Id.* That said, "numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the [numerosity] requirement." 3B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.05[1], at 23-143–45 (2d ed. 1982); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (explaining that classes consisting of over forty members "should raise a presumption that joinder is impracticable") (quoting 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 3.05, at 3–25 (3d ed.1992)); *see also Valentine v. Collier*, 490 F. Supp. 3d 1121, 1157 (S.D. Tex. 2020) (Ellison, J.) (explaining that a proposed class of over forty members presumably satisfies numerosity), *rev'd on other grounds*, 993 F.3d 270 (5th Cir. 2021). To be entitled to such a presumption, plaintiffs "must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). Plaintiffs may demonstrate that joinder is impracticable based upon the estimated number of members in the class, as well as other facts that make joinder impracticable, such as "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.* (quoting *Zeidman*, 651 F.2d at 1038).

This Benefit Accrual Subclass consists of ANR employees who were hired before they turned 35, such that Kinder Morgan's changed calculation method would leave them with a

reduction in benefits. Plaintiffs point to evidence indicating that at least 834 individuals fit these criteria. *See* Decl. of Stephen Bruce ¶¶ 4–5, ECF No. 104-3; Decl. of Malcolm Rugeley ¶¶ 3–4, ECF No. 194-4.[4] This number is well clear of Rule 23(a)(1)'s numerosity bar.

Beyond its approximate numerical size, the subclass is not concentrated into one geographic area—indeed, when they filed this lawsuit, Mr. Pedersen resided in Michigan, while Ms. Leutloff resided in Illinois. Pls.' Am. Compl. ¶¶ 1–2. At the hearing on the Motion for Class Certification, Plaintiffs stated that there are additional class members residing in Wisconsin and Kansas. Hr'g Tr. 21:12–13, Nov. 30, 2023. Given that subclass members need only have shared a common employer in 2001, they very well could have changed employers and domiciles in intervening years, thereby making joinder impracticable. *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) ("[W]hen conducting a numerosity analysis, district courts must not focus on sheer numbers alone but must instead focus 'on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'") (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir.1981)); *contra Jaynes v. United States*, No. 04-856C, 2006 WL 44175 (Fed. Cl. Jan. 5, 2006) (numerosity not established for class of 258 where defendant could show that 74 percent presently worked at the same facility and at least 81 percent resided within the same state). Further, the complexity of pension plan calculations could mean that, absent certification, some would-be subclass members would fail to realize that they did not, or will not, receive the full benefits to which they are entitled (if, unlike Leutloff, they do not regularly check their benefit projections). All in all, given Plaintiffs' reasonable

---

[4] The Court notes that two months after filing a Motion to Strike the Supplemental Declaration of Stephen Bruce, Defendants produced the data that underlies Bruce's supplemental declaration. *See* Pls.' Suppl. Br. 11, ECF No. 194; Decl. of Malcolm Rugeley ¶ 3. As such, Defendants' Motion to Strike (ECF No. 139) is now moot.

estimate of the subclass' size, and other relevant factors rendering joinder impracticable, the Court finds and holds that Plaintiffs have satisfied numerosity for this subclass.

### 2. Commonality

Rule 23(a)(2) requires common questions of law or fact for the proposed class. Put differently, "class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). These common questions must show that all class members suffered the same injury and their claims for relief "depend upon a common contention," such that their claims are "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. A common issue arises where all putative class members "suffered the same injury," "even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d at 810–11.

Plaintiffs identify the following questions as common to each subclass member's claim: (1) whether the plan violated ERISA's benefit accrual rules based on the elimination of the thirty-year maximum in the denominator of the fraction used to determine accrued benefits, (2) whether the summary plan descriptions violated ERISA's disclosure requirements based upon the changed calculation method, and (3) whether the changed calculation method violated ERISA's anti-cutback rule.

Plaintiffs point the Court to *Forbush v. J.C. Penney Co.*, a case in which the Fifth Circuit certified a class that included "four different J.C. Penney pension plans." 994 F.2d 1101, 1106 (5th Cir. 1993). There, the court explained that plaintiffs met the commonality requirement because resolution of whether a calculation involved in the plans violated an ERISA provision presented a common issue. *Id.* The fact that "subsequent determinations of individual awards are likely to be .

. . somewhat complex" did not alter the *Forbush* court's conclusion. *Id.* Here, too, resolution of whether the changed denominator, plan descriptions, and changed calculation method violated ERISA presents a common issue.

Defendants argue that Plaintiffs cannot establish commonality because, in order to prevail, each subclass members must establish detrimental reliance on Kinder Morgan's inadequate disclosure of the benefit accrual formula. The detrimental reliance requirement, Defendants contend, necessitates an individual-by-individual inquiry, thereby defeating commonality. However, Defendants' assertion relies on case law that predates the Supreme Court's decision in *CIGNA Corp. v. Amara*, where the Court held that an ERISA plaintiff need not demonstrate detrimental reliance. 563 U.S. 421, 444–45 (2011). Therefore, in this case, such an individual-by-individual inquiry of who detrimentally relied upon the claim is not necessary. The Court finds and holds that Plaintiffs have satisfied commonality for the Benefit Accrual Subclass.

### 3.  Typicality

Rule 23(a)(3) requires plaintiffs to establish that the claims of the named plaintiffs are typical of those of the class. *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007). The Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 349 n.5.

All subclass members in this case—including the named plaintiff—proceed under identical theories of liability, which stem from identical allegations regarding Defendants' conduct. *See* Pls.' Am. Compl. ¶¶ 41–102. To the extent that Defendants recast their detrimental reliance argument as a typicality argument, for the same reasons stated above, those arguments fail. Accordingly, the Court finds and holds that Plaintiffs have satisfied typicality for the Benefit Accrual Subclass.

### 4.  Adequacy of representation

The adequacy determination requires "an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005) (quoting *Berger v. Compaq Compl. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)). The Court must also seek out "conflicts of interest between the named plaintiffs and the class they seek to represent." *Id.* (quoting *Berger*, 257 F.3d at 479–80). The adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality requirements, given that the adequacy analysis seeks to measure whether the named plaintiff's claims are related enough to class members' claims such that "the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). However, the adequacy requirement "also raises concerns about the competency of class counsel and conflicts of interest." *Id.*

Defendants do not challenge the adequacy of class counsel, who have extensive experience in ERISA class action litigation. *See, e.g.*, Ex. 17 to Pls.' Mot. to Certify Class, ECF No. 104-18 (Plaintiffs counsel's firm biography). Rather, Defendants argue that the named plaintiffs have "abdicated control of the case to their attorneys." Defs.' Resp. 26, ECF No. 120. Specifically, Defendants note that when Leutloff was asked about how she was monitoring the litigation, conferring with other potential class members, supervising the conduct of her attorneys, reviewing court filings, and ensuring she were fulfilling any other duties to safeguard interests of absent class members, she refused to answer based upon the instruction of counsel, who objected that such questions invaded privileged communications. *Id.* at 27 (citing Leutloff Dep. 21:19-22:05, ECF No. 104-12).

The Fifth Circuit has held that class representatives must direct litigation, not their counsel, and thus, "class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). But they "need not be legal scholars." *Berger*, 257 F.3d at 483; *see also* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1766 (3d ed. 1998) ("[K]nowledge of all the intricacies of the litigation is not required."). Rather, named Plaintiffs need only "show a willingness to take an active role in, and control, the litigation." *Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345, at *9 (S.D. Tex. June 14, 2016) (Ellison, J.).

Plaintiffs have put forth more than enough evidence of the impressive initiative that Leutloff has taken over the course of many years to pursue this litigation on behalf of herself and putative class members. *See* Ex. 11 to Pls.' Mot. to Certify Class, Leutloff Dep. 18:24-19:21, 20:22-21:18, 22:14-17, 36:9-37:11, ECF No. 104-12 (demonstrating a clear knowledge of the underlying facts, the goals of the litigation, and her responsibilities as a named plaintiff); Ex. 13 to Pls.' Mot. to Certify Class, ECF No. 104-14 (November 2018 email from Leutloff to Kinder Morgan representative flagging changed retirement calculations and referring to previous discussions on the subject). Moreover, Leutloff's refusal to reveal privileged information to defense counsel does not undermine the conclusion that she adequately represents the class; it bolsters it. The Court finds and holds that Plaintiffs have satisfied Rule 23(a)'s adequacy of representation requirement for this subclass.

### B.  Early Retirement Benefit Subclass

The parties sharply disagree over how the Court should determine who fits within this subclass. Because this determination affects whether the subclass satisfies Rule 23(a)'s

requirements, the Court shall first specify how it conceives of the Early Retirement Benefit Subclass.

Given the underlying allegations, this subclass consists of all current or former ANR employees who either (1) had not reached age 53 when the Ninth Amendment was issued in 2007 and have accumulated, or could still accumulate, five years of service, such that they would be eligible for early retirement had the Ninth Amendment not prevented them from "growing into" eligibility, or (2) commenced or (like Leutloff) could have commenced retirement benefits at age 62-64 between 2018 and the present date, or may still commence retirement benefits at age 62-64 at some point in the future. Defendants argue that this definition is overly broad for two primary reasons.

First, Defendants argue that individuals like Leutloff—that is, those who could have, but did not, commence early retirement benefits at age 62-64—should not be considered part of this subclass. This argument is based in the assumption that a participant must retire to commence pension plan benefits. Because a variety of individualized considerations go into an individual's decision on whether and when to retire, the argument continues, not everyone who was eligible for early retirement benefits at age 62, but did not commence benefits until age 65, was harmed by the plan amendments. This argument is flawed because its underlying assumption is inaccurate. Under Kinder Morgan's plan, eligible former and current ANR employees may commence benefits without retiring.[5] Apart from awaiting the result of the instant litigation, there is no economically sound reason for individuals to opt out of receiving early retirement benefits to which they are entitled. As such, Defendants' "calculation error" harmed all individuals who could have, but did

---

[5] Conversely, plan participants may retire without commencing benefits, as Leutloff did. Hr'g Tr. 32:1–4, Nov. 30, 2023. Leutloff chose not to receive benefits out of an abundance of caution, in hopes of receiving the full benefits to which she believes she is entitled upon the resolution of the instant suit. Pls.' Am. Comp. ¶ 136.

not, commence early retirement benefits, as it necessarily deprived them of additional monthly income. Individuals in Leutloff's position accordingly belong to the Early Retirement Benefit Subclass.

Secondly, Defendants contend that ANR participants who were under age 53 in 2007 and accumulated five years of service, but "took a lump sum or passed away before 2017 (when the Kinder Morgan Plan A was spun off)" do not belong to this subclass. Defs.' Suppl. Br. 5, ECF No. 198. Specifically, Defendants argue that those who took a lump sum or passed away before 2017 do not fit the general class criteria that all members must be a participant in "the Kinder Morgan Retirement Plan A or Plan B." *Id.* In response, Plaintiffs point to 29 U.S.C. § 1002(7), which defines "participant" as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." Courts have interpreted this language to mean that a "former employee with 'a colorable claim to vested benefits "may become eligible"' for benefits and may bring an action under ERISA." *Bilello v. JPMorgan Chase Ret. Plan*, 592 F. Supp. 2d 654, 663 (S.D.N.Y. 2009) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989)).

The Court agrees with Defendants that those who took a lump-sum payment based on early retirement eligibility prior to the 2007 plan changes do not not belong to this subclass. Because Defendants harmed subclass members only through the plan's 2007 changes, plan participants who took full advantage of early retirement eligibility prior to the allegedly unlawful plan changes were not harmed. However, these individuals are already excluded from the subclass as defined above, as the Ninth Amendment did not prevent them from growing into early retirement eligibility, and they did not commence benefits between 2018 and the present.

The Court agrees with Plaintiffs that those who took lump-sum payments that were reduced by the Ninth Amendment to the plan belong to this subclass, even if they took a lump-sum payment, passed away, or stopped working for ANR prior to 2017.[6] There is nothing in the plan language or elsewhere in the record that could lead the Court to conclude that separate calculations apply to plan participants who receive their benefits via lump sum. *Cf. Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562, 568 (N.D. Cal. 2011) (defining class as employees who were allegedly eligible to receive annuity as lump-sum or deferred annuity, because the "appropriate construction of the plan under ERISA" was identical between the two groups). The plain language of ERISA leads this Court to conclude that, so long as participants would have been eligible for unreduced early retirement benefits, and the Ninth Amendment deprived them of that unreduced benefit, they may have a colorable claim under ERISA and accordingly belong to this subclass. *Cf. Biello*, 592 F.Supp.2d at 663.  Therefore, the Court rejects Defendants' proposed additional criteria that would narrow the subclass. The Court proceeds based upon the definition set forth above.

### 1. Numerosity

Several different documents that Defendants produced in discovery indicate that this subclass consists of over forty individuals. *See* Decl. of Malcolm Rugeley ¶ 5 (explaining that, of the records Defendants have produced to date, "there are 50 current or former ANR participants who were under age 53 at the end of February 2007" and that all 50 "had at least five years of service"); Exhibit A to Defs.' Mem. in Supp. of Privilege, ECF No. 123-2 (internal Kinder Morgan

---

[6] Defendants also contend that individuals who were not actively employed by ANR in 2007 are excluded from the Early Retirement Benefit subclass, arguing that the Ninth Amendment did not cover former ANR employees. However, the Court agrees with Plaintiffs' interpretation of the plan. That is, that the Ninth Amendment's language providing that the "ANR Pipeline Company shall cease to be a participating Employer" means that the early retirement benefit cutback applied to then-current and former ANR employees. *See* Exhibit H to Defs.' Mot. to Dismiss, ECF No. 22-9 (Ninth Amendment).

memoranda indicating that prior to calculation changes, the projected benefits calculator showed at least 34 ANR participants that they were eligible for unreduced benefits at age 62)[7]; Ex. 9 to Pls.' Suppl. Br. 2, ECF No. 194-10 (internal Kinder Morgan emails indicating that 189 participants previously received a lump sum based on reduced benefit, but would receive a larger lump sum if entitled to unreduced benefits at age 62). Over forty—and certainly over 100—putative subclass members raises a presumption of numerosity. *See Mullen*, 186 F.3d at 624 (forty or more class members raises presumption that class is sufficiently numerous). As with the Benefit Accrual Subclass, these subclass members are geographically dispersed. *See* Pls.' Am. Compl. ¶¶ 1–2; Hr'g Tr. 21:12–13, Nov. 30, 2023. And, as with the Benefit Accrual Subclass, some subclass members could fail to realize they have a valid ERISA claim absent certification. These additional factors further suggest that joinder of all subclass members is impracticable. *Ibe*, 836 F.3d at 528. Accordingly, the Court finds and holds that Plaintiffs have met Rule 23(a)'s numerosity requirement for the Early Retirement Benefit Subclass.

### 2.  Commonality

To establish commonality for this subclass, Plaintiffs point the Court to a case with strikingly similar facts, *Cotillion v. United Ref. Co.*, No. CIV.A. 09-140E, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013), *aff'd*, 781 F.3d 47 (3d Cir. 2015). There, as here, a pension plan administrator first interpreted the plan to provide unreduced early retirement benefits, but later announced it would actuarially reduce such benefits as a result of a purported error in calculations. *Id.* at *1.

---

[7] Parties spent many months contesting whether or not the source of this data—several drafts of an internal memorandum—is privileged. On February 2, 2024, this Court overruled Plaintiffs' Objections to Magistrate Judge Dena Hanovice Palermo's Memoranda and Orders, and concluded that the memoranda were privileged. ECF No. 203. Therefore, the Court considers only the redacted copies of the memoranda, which Defendants produced shortly after Judge Palermo's September 29, 2023 ruling. *See* ECF No. 185 at 2.

The *Cottillion* court found commonality met, reasoning that "[a]lthough the particular harm suffered by each Plaintiff as a result of that decision varies, the source of that harm—the legal determination by the Plan that the provision of unreduced benefits had been in error—is the same for each Plaintiff." *Id.* at *3. Unlike in *Dukes*, the *Cotillion* court explained, the class members' injury—the actuarial reduction in benefits—stemmed from a single "cutback" policy, as opposed to several disparate decisions. *Id.* at *2–*3.

In its commonality analysis, the *Cottillion* court relied in part upon a case with similar facts, *Savani v. Washington Safety Mgmt. Sols., LLC*, No. 1:06-CV-02805-MBS, 2012 WL 3757239, at *3 (D.S.C. Aug. 28, 2012). In *Savani*, the court explained that commonality was satisfied because "the theory of liability of each member [was] identical, i.e. Defendants violated the Employee Retirement Income Security Act's ('ERISA') anti-cut back rule." Similarly, in this case, all subclass members allege ERISA violations based on Kinder Morgan's unilateral change in its unreduced early retirement policy. To be sure, the exact amount that each subclass members' monthly pension award was reduced is unique to each individual. But, as in *Cottillion* and *Savani*, the source of the reduction is the same for each member. Thus, the Court's resolution of (1) whether Defendants' policy changes violated ERISA's anti-cutback rule and (2) whether class members are due an unreduced benefit therefore resolves the subclass members' claims in one fell swoop, just as the commonality requirement demands.

Defendants do not dispute that subclass members' claims are resolved by common issues, rather, they argue that Defendants' statute of limitations defense requires individualized, factual determinations that defeat commonality. In its August 2022 opinion, this Court rejected Defendants' arguments that claims VI and IV accrued in 2007, and denied Defendants' motion for judgment on the pleadings as to the untimeliness of claims VI and IV. *Pedersen*, 622 F. Supp. 3d

at 536–37 (Ellison, J.). The Court noted that, when faced with ERISA claims, "courts guard against potential unfairness" by "refusing the find clear repudiation when plan communications involve information or formulae too complex or obscure for the layperson to decipher." *Id.* at 536. Pointing to (1) a 2007 email from the El Paso Plan's benefit specialist stating that participants could receive unreduced benefits at age 62 and (2) the fact that Kinder Morgan provided unreduced benefits to participants who commenced benefits at age 62 from 2007 until mid-2018, the Court concluded that there was no "clear repudiation" until mid-2018. *Id.* at 537. In other words, Plaintiffs' claims accrued in "mid-2018, when defendants unequivocally stopped giving out unreduced benefits." *Id.* Accordingly, because Plaintiffs brought their claims within the applicable four-year limitations period, they were not time-barred. *Id.*

Defendants argue that this holding only determined accrual with respect to the named plaintiffs, not the class as a whole. To the contrary, the Court's 2022 opinion is best read as concluding that "defendants unequivocally stopped giving out unreduced benefits" to *all* previously eligible participants in mid-2018. *Id.* While not all subclass members received the 2007 email confirming that they could receive unreduced benefits at age 62, *see* Ex. 12 to Pls.' Mot. to Certify Class, ECF No. 104-13, it is undisputed that Kinder Morgan provided unreduced benefits to participants who commenced their plan at age 62 from 2007 to mid-2018. Thus, for the named plaintiff and unnamed subclass members alike, there was no "clear repudiation"—and, therefore, no accrual—until mid-2018. There is no commonality-defeating individualized limitations inquiry in this case. As such, the Court finds and holds that Plaintiffs have satisfied commonality for the Early Retirement Benefit Subclass.

### 3.  Typicality

The typicality requirement "is not demanding." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). It is satisfied if the named plaintiff and unnamed class members "advance legal and remedial theories" that are "similar, if not identical." *Id.* Courts generally find typicality satisfied where the named plaintiff and unnamed subclass members' claims allege "a common course of conduct in violation of ERISA." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 555 (S.D. Tex. 2005); *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 453 (W.D. Tex. 2006) (typicality satisfied where named and unnamed plaintiffs sought benefits under an ERISA plan); *see also Chavez v. Plan Benefit Servs., Inc*, No. 1:17-CV-659-LY, 2022 WL 1493605, at *17 (W.D. Tex. Mar. 29, 2022) (typicality satisfied where named and unnamed plaintiffs alleged breach of fiduciary duty under ERISA), *aff'd sub nom. Chavez v. Plan Benefit Servs., Inc.*, 77 F.4th 370 (5th Cir. 2023).

Here, Leutloff's claims and all subclass members' claims stem from the same allegedly unlawful plan amendment. However, Defendants contend that Leutloff's claims are not typical of those of the subclass because, while the plan amendment harmed Leutloff, it benefitted some subclass members. Specifically, Defendants point out, when the Ninth Amendment to the Coastal Appendix removed "ANR" from the list of "Affiliated Employers," it allowed a TransCanada employee who was no longer considered an ANR employee to collect retirement benefits from the Plan, which otherwise prohibits in-service distributions. If Plaintiffs received the relief they sought—specifically, counting service at TransCanda towards early-retirement eligibility—some TransCanada employees would be unable to commence retirement benefits while continuing to work for TransCanada, while others may have to repay the plan.

The Court is not convinced that subclass members will lose out if Leutloff receives the relief she seeks. If the Court ultimately finds that Defendants' conduct violated ERISA, it "enter[s] the world of equity" in which the remedy need not "be a perfect reflection of the legal violations supporting the remedy." *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 726 (D.C. Cir. 2012). Courts have considerable discretion to fashion appropriate equitable remedies. *See id.* If the Court were to eventually impose equitable relief, it could shape the relief to avoid the detrimental effects Defendants identify.[8]

To be sure, the Court passes no judgment as to what appropriate equitable relief may be, or if equitable relief is appropriate at all. Such determinations are not proper at the class certification stage. All that the foregoing is meant to show is that Leutloff's theory of relief does not harm unnamed subclass members, and is therefore not fatal to the typicality analysis. The Court finds and holds that typicality is satisfied.

### 4.  Adequacy of representation

The adequacy analysis for this subclass mirrors that of the Benefit Accrual Subclass, save for one additional argument that Defendants mount: that the relief that the named plaintiffs seek would harm some absent subclass members. Such arguments mirror Defendants' arguments for why named plaintiffs do not satisfy typicality for this subclass. For reasons discussed above, these arguments fail. The Court finds and holds that Plaintiffs have met Rule 23(a)'s adequacy requirement for this subclass.

---

[8] The parties dispute whether 26 C.F.R. § 1.411(d)-3(a)(2)(ii) is best read to prevent plan sponsors from requiring participants whose benefits are increased by a plan amendment to repay the plan, that is, whether the regulations would prevent the Court from fashioning equitable relief such that some subclass members must repay the plan. The Court need not pass on this issue at this stage; for the purposes of the typicality analysis, it is sufficient to acknowledge that appropriate equitable relief would not harm unnamed subclass members.

### C. Actuarial Equivalent Subclass

#### 1. Numerosity

The Actuarial Equivalence Subclass is comprised of all current or former ANR or Coastal employees who participated in the El Paso Plan in 2001 and for whom the GAM83 mortality table and an 8% interest rate were used to determine the "actuarial equivalent" benefit. Defendants concede that this subclass is at least as large as the Early Retirement Benefit Subclass. Defs.' Suppl. Br. 5 (agreeing that the Actuarial Equivalent Subclass is larger than the Early Retirement Benefit Subclass). Indeed, the Early Retirement Benefit Subclass is a subset of the Actuarial Equivalent Subclass, because Defendants used the GAM83 mortality table and 8% interest rate in calculating reduced retirement benefits. The Court already determined that the Early Retirement Benefit Subclass is sufficiently numerous. It necessarily finds and holds that the Actuarial Equivalent Subclass is as well.

#### 2. Commonality

With respect to this subclass, Plaintiffs argue that the common issue affecting the subclass is whether the plan's use of an outdated GAM83 mortality table and 8% interest rate violate ERISA's actuarial equivalence requirement.

Defendants point out that Plaintiffs advocate for using the lower interest rate from around the time the complaint was filed, but Plaintiffs do not limit the subclass to those who commenced retirement benefits around that date. Because interest rates have dramatically varied over the relevant time period, Defendants' argument continues, determining whether Defendants violated ERISA's actuarial equivalence requirement requires the Court to compare the present value of each member's early retirement benefit to the present value of their normal retirement benefit as of the date of commencement of their early retirement benefit. Therefore, the Court cannot resolve

class members' claims in one stroke. In support of this proposition, Defendants cite *Thorne v. U.S. Bancorp*, a case in which a district court found that plaintiffs had not established commonality where some class members *were* receiving actuarially equivalent benefits and had therefore not experienced an ERISA violation. No. CV 18-3405 (PAM/KMM), 2021 WL 1977126, at *2 (D. Minn. May 18, 2021).

This case differs from *Thorne* in significant ways. In *Thorne*, the plaintiffs' expert put forth six alternative models using different actuarial assumptions, and plaintiffs proposed that one of the expert's models replace the assumptions defendants' plan used to calculate their benefits. *Id.* at *2. The court explained that "no model result[ed] in higher benefits for all class members and each model result[ed] in lower benefits for some class members," and, furthermore, the expert had "conceded that 251 class members . . . receive[d] actuarially equivalent benefits." *Id.* Because some members had not suffered any injury under ERISA, the *Thorne* court concluded that plaintiffs had not met commonality. Differently, here, Plaintiffs' expert report shows that *no* subclass members have received actuarially equivalent benefits, and, therefore, *all* subclass members have experienced an ERISA violation. Ex. 18 to Pls.' Mot. to Certify Class 13, ECF No. 104-19. Specifically, Plaintiffs' expert report states that "[a]ccording to historical records . . . interest rates have been below 8% in every one of the over 230 months since October 2004 . . . an 8% interest rate for the time period from October 2004 to the present is not reasonable." *Id.* As such, the common question of whether the GAM83 mortality table and 8% interest rate violate ERISA's actuarial equivalence requirement pervades the subclass. The fact that each subclass member may have suffered a different degree of harm as a result of Defendants' actuarial assumptions does not defeat commonality; the source of their harm was the same. *See Cottillion*,

2013 WL 5936368, at *3. The Court finds and holds that Plaintiffs have demonstrated commonality for the Actuarial Equivalence Subclass.

### 3. Typicality

As with the Early Retirement Benefit Subclass, Defendants put forth a "winners" and "losers" argument to challenge typicality for this subclass. Defendants argue that the named plaintiffs' claims are not typical because this subclass contains some members who were harmed by the Plan's actuarial assumptions, and some who benefitted from them. From here, Defendants similarly argue that using lower interest rates—as Plaintiffs contend is appropriate—will benefit Leutloff and others, but will harm late retirees.

As just discussed, Plaintiffs' expert report disproves Defendants' first point. No subclass members benefitted from the use of interest rates that were higher than every interest rate in the applicable period. Turning to Defendants' second point, they may be correct that lower interest rates would harm late retirees in theory. To illustrate the possible benefit of using the Plan's actuarial assumptions (with an 8% interest rate) rather than Plaintiffs' proposed assumptions (a 4% to 5.5% interest rate), Defendants give the following example: a late retiree who retires at age 75 and is expected to live until 85 would be expected to receive fewer monthly retirement payments than if they had retired at a younger age. Therefore, they should receive increased monthly benefits in order to offset the reduced number of payments they expect to receive. Lowering the interest rate from 8% to 4% would mean increasing their benefits by a smaller amount, resulting in a net decrease.

Plaintiffs' reply points out an important flaw in Defendants' argument: the Plan's challenged actuarial assumptions do not apply to late retirees.[9] Under the Plan's provisions for late retirement benefits for El Paso Participants, it states that there is "no adjustment for delayed commencement," Ex. 4 to Defs.' Resp. 10, ECF No. 20-5, except if "a Participant continues working after the calendar year in which he or she turned age 70 1/2," in which case "the Late Retirement Benefit shall be Actuarially increased to the extent required by Code Section 401(a)(9)(C)(iii)," Ex. 1 to Pls.' Reply 3, ECF No. 128-1. The referenced Code requires that for employees who retire after age 70 1/2, their "accrued benefit shall be actuarially increased to take into account the period after age 70 1/2 in which the employee was not receiving any benefits under the plan." 26 U.S.C. § 401(a)(9)(c)(iii). Plaintiffs are correct that the statute, and, therefore, the Plan, does not incorporate the 8% interest rate or the 1983 GAM mortality table for late retirees. Internal Kinder Morgan emails confirm that there is no actuarial adjustment for late retirees. Ex. 10 to Pls.' Suppl. Br. 3, ECF No. 194-11 ("We did not find any Plan terms that provide for an actuarial adjustment if [a participant] elects a future benefit commencement date that occurs after the normal retirement date."). Defendants' concern is well-founded in theory, but illusory in fact. The Court finds and holds that Plaintiffs have satisfied typicality for the Actuarial Equivalent Subclass.

### 4. Adequacy of representation

The Court has already found that class counsel and named plaintiffs are adequate representatives. The Court has also already rejected Defendants' arguments that the relief that the named plaintiffs seek under claim VI (which corresponds to this subclass) would harm some absent

---

[9] Plaintiffs' reply also aptly points out that the district court case Defendants cite dealt with a Plan that, unlike Kinder Morgan's plan, applied actuarial assumptions to late retirees. *See Torres v. Am. Airlines, Inc.*, No. 4:18-CV-00983-O, 2020 WL 3485580, at *11–*12 (N.D. Tex. May 22, 2020).

class members. Accordingly, the Court finds and holds that Plaintiffs have satisfied the adequacy requirement for the Actuarial Equivalent Subclass.

### D. Rule 23(b)

Plaintiffs assert that the class and subclasses each satisfy Rule 23(b)(2). In the alternative, Plaintiff contends that the class and subclasses satisfy Rule 23(b)(1)(A) and (b)(3).

Rule 23(b)(2) "requires common behavior by the defendant towards the class." *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010). Here, Plaintiffs' claims challenge the calculation methods and notices that apply uniformly to each putative class and subclass member—thus, this case squarely falls within Rule 23(b)(2)'s purview. Indeed, as Plaintiffs note, many circuit courts—including the Fifth Circuit—have affirmed ERISA class action certifications for benefits under Rule 23(b)(2). *See, e.g.*, *Forbush*, 994 F.2d at 1105–06; *Amara v. CIGNA Corp.*, 775 F.3d 510, 523 (2d Cir. 2014) (affirming certification of 23(b)(2) class to obtain equitable remedy of reformation of a plan that violated ERISA); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 759, 763–64 (7th Cir. 2003) (affirming 23(b)(2) class for ERISA actuarial equivalence claims). Defendants challenge this conclusion on two grounds.

First, Defendants reiterate their arguments against typicality; that is, they assert that some absent class members would be harmed if the Court granted Plaintiffs' request relief. For reasons described in the Court's Rule 23(a) analyses, the Court rejects these arguments.

Second, Defendants argue that each subclass requires individualized damage determinations, rather than a uniform group remedy. Plaintiffs respond that, if the Court ultimately grants the relief they seek, any final injunctive order would set forth a detailed methodology for calculating benefits for each subclass. The Court agrees that final injunctive relief would

appropriately respect each subclass as a whole, as Rule 23(b)(2) requires. Moreover, to the extent that Defendants' argument sounds in predominance, the 23(b)(2) inquiry does not focus on whether issues—including determinations of relief—are common to the class; it is solely concerned with whether the defendant "has acted or refused to act on grounds that apply generally to the class." FED. R. CIV. P. 23(b)(2); *see also Forbush*, 994 F.2d at 1105 ("[T]he question of whether common issues 'predominate' over individual ones has no place in determining whether a class should be certified under 23(b)(2)."); *Casa Orlando Apartments*, 624 F.3d at 198 ("Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant towards the class."). Here, each of Plaintiffs' claims stem from Defendants' common behavior.

Therefore, the Court finds that Plaintiffs have met Rule 23(b)(2)'s requirements for each subclass. As such, the Court need not assess whether Plaintiff has met the requirements set forth in Rule 23(b)(1)(A) or 23(b)(3).

### E. Defendants' request for additional discovery

Plaintiffs have communicated to the Court that they intend to move to add Randall Schmidgall as a second named plaintiff. The Court ordered supplemental briefing in part to assess whether it needed to rule on this anticipated motion prior to ruling upon the Motion for Class Certification. In its supplemental briefing, Defendants requested that the Court allow for additional "discovery as to Mr. Schmidgall's fitness as class representative" prior to the resolution of Plaintiffs' Motion for Class Certification. Defs.' Suppl. Br. 3. However, Leutloff alone satisfies all of Rule 23's applicable requirements. Therefore, the addition of Mr. Schmidgall as a named plaintiff does not impact the Court's class certification analysis. To the extent that Defendants request discovery and abeyance of deadlines pending the Court's ruling on Plaintiffs' Motion for Class Certification, their requests are hereby **DENIED**. The Court will consider requests for

additional discovery and abeyance of deadlines if and when it considers Plaintiffs' motion to add Mr. Schmidgall as a named plaintiff.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 104).

The Class is defined as follows: any and all persons who participated in the Kinder Morgan Retirement Plan A or Plan B who: (1) are current or former employees of the ANR Company or the Coastal Corporation, (2) participated in the El Paso Pension Plan after El Paso acquired the Coastal Corporation in 2001, and (3) are a member of at least one subclass, as defined below.

The subclasses are defined as follows:

1. Benefit Accrual Subclass, relating to Claims I – III in Plaintiffs' Amended Complaint: any and all Class Members whose normal retirement benefit is greater than the accrued benefits that El Paso or Kinder Morgan has been offering.

2. Early Retirement Subclass, relating to claims IV and V in Plaintiffs' Amended Complaint: any and all legacy ANR employees who (i) may be due "unreduced" retirement benefits at age 62 under the ANR Legacy provision in Section 15 of the Coastal Appendix (prescribing Section 4.1(c)(iv) of the plan), or (ii) who would be eligible for the Coastal early retirement provision at age 55 and over if they had not been prevented from "growing into" eligibility by the "Ninth Amendment" to the Coastal Appendix which removed "ANR" from the list of "Affiliated Employers."

3. Actuarial Equivalence Subclass, relating to Claim VI in Plaintiffs' Amended Complaint: all former Coastal Corporation employees, as well as former ANR employees, for whom

Defendants determined or would determine their "actuarial equivalent" benefit amount before age 65 by using the GAM83 mortality table and an 8% interest rate.

The Court appoints Beverly Leutloff as class representative for the Class and Subclasses. The Court appoints Stephen R. Bruce and Feinstein Doyle Payne & Kravee, LLC as class counsel.

The Court **DENIES AS MOOT** Defendants' Motion to Strike Portions of Plaintiffs' Reply in Support of Motion for Class Certification (ECF No. 139).

        **IT IS SO ORDERED.**

        **SIGNED** at Houston, Texas, on this the 8th day of February, 2024.


                                      _____

                                      KEITH P. ELLISON
                                      UNITED STATES DISTRICT JUDGE