United States District Court
Southern District of Texas
**ENTERED**
August 10, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CURTIS T PEDERSEN, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-03590** |
| | § | |
| **KINDER MORGAN INC, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM & ORDER**

Before the Court are Plaintiffs' Motion for Equitable Relief (ECF No. 245), Magistrate Judge Ho's Memorandum and Recommendations (ECF No. 254) ("M&R"), and Plaintiffs' Objections to the M&R (ECF No. 256). Defendants have not objected to the M&R, though they have preserved their right to appeal this Court's prior findings on liability, and responded in opposition to Plaintiffs' objections. The Court has reviewed all the relevant briefing and conducted a *de novo* review of the portions of the M&R to which Plaintiffs objected.[1] *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. PRO. 72(b)(3). For the reasons that follow, Plaintiffs' objections are

[1] Defendants acknowledge Rule 72's mandate that this Court "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. PRO. 27(b)(3). However, they fault Plaintiffs' objections for "recycl[ing] arguments Judge Ho already considered and rejected." ECF No. 260 at 1. The Court finds no legal support for the notion that a party may not re-urge arguments already considered by the magistrate judge in its objections. Moreover, the fact that Judge Ho "already considered" a given argument does not preclude this Court from reaching a different result. While the Court has the utmost respect for Judge Ho's thorough consideration of the issues, this does not relieve the Court of its obligation to review her recommendations *de novo*.

**SUSTAINED IN PART** to the extent described below. The Motion for Equitable Relief is **GRANTED IN PART** and **DENIED IN PART,** as follows.[2]

## I. Relief for the Benefit Accrual Disclosure Violations

1. With regard to the Benefit Accrual subclass, the Court previously found that Defendants violated ERISA § 102 by failing to understandably disclose the impact of the 2001 Coastal Transition Benefit formula's use of an "uncapped" denominator in the fraction used to calculate retirement benefits on participants hired before age 35 in its Summary Plan Descriptions ("SPDs"). *See Pedersen v. Kinder Morgan Inc.*, 742 F. Supp.3d 725, 745-47 (S.D. Tex. 2024). The SPDs failed to explain, in a manner calculated to be understood by an average participant, that employees hired prior to age 35 "do not earn the 2% of pay benefit promised in the SPD, but instead may earn as little as 1.33% of pay after a fraction based on the years between their date of hire and age 65 is applied." *Id*. at 745. This violation of § 102 "risk[ed] misleading participants who were hired before age 35 as to their total amount of accrued benefits." *Id*. at 747.

2. Plaintiffs request that the Court provide "appropriate equitable relief" to the Benefit Accrual subclass under ERISA § 502(a)(3) in the form of reformation of the Coastal Transition Benefit formula, and, in the alternative, injunctive relief and equitable surcharge. The M&R recommends denying any type of equitable relief to the Benefit Accrual subclass.

[2] The Court assumes the parties' familiarity with the background of this case. A full discussion of the underlying facts can be found in this Court's prior rulings and Judge Ho's M&R. *See Pedersen v. Kinder Morgan Inc.*, 622 F. Supp. 3d 520, 526-32 (S.D. Tex. 2022); *Pedersen v. Kinder Morgan Inc.*, 345 F.R.D. 302, 308-12 (S.D. Tex. 2024); *Pedersen v. Kinder Morgan Inc.*, 742 F. Supp. 3d 725, 731-37 (S.D. Tex. 2024); M&R at 2-9. The Court incorporates these previous discussions.

3. This Court SUSTAINS Plaintiffs' objection to the M&R's recommendation that the equitable remedy of reformation is not available to the Benefit Accrual subclass for the disclosure violations this Court found on Claim III of Plaintiffs' Amended Complaint.

4. "Reformation requires a plaintiff to show either a mutual mistake of both parties or the mistake of one party coupled with fraud or inequitable conduct by the other." *Lauga v. Applied Cleveland Holdings, Inc.*, 2018 WL 3495860, 13 at *3 (E.D. La. July 20, 2018). "A plaintiff must prove mistake and fraud by clear and convincing evidence." *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 252 (D. Conn. 2012), *aff'd*, 775 F.3d 510 (2d Cir. 2014). Here, there is no allegation of mutual mistake, so only fraud or inequitable conduct are at issue.

5. "Fraud has a broader meaning in equity [than at law] and intention to defraud or to misrepresent is not a necessary element." *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 348 (6th Cir. 2018) (quoting *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 193 (1963)). "Fraud. . . in the sense of a court of equity properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." *Id.* (internal quotation marks omitted) (quoting *Capital Gains Research Bureau, Inc.*, 375 U.S. at 193).

6. While the M&R acknowledges that "intention to defraud or to misrepresent is not a necessary element" of equitable fraud for the purposes of ordering reformation, it nonetheless concludes that reformation should not be available without proof that "Defendants engaged in *some* wrongdoing apart from the disclosure violation itself." M&R at 14 (emphasis in original). The Court agrees with Plaintiffs that this requirement

overstates the necessary showing for equitable fraud and has the practical effect of imposing an intentional misconduct requirement.

7. The Sixth Circuit's decision is *Pearce*, though not binding on this Court, is instructive. In *Pearce*, the Sixth Circuit described three relevant "guideposts" for assessing equitable fraud. *Pearce*, 893 F.3d at 347. First, "whether a defendant had a 'legal or equitable duty, trust, or confidence'" is "an important factor." *Id*. Second, the defendant must have "obtained 'an undue and unconscientious advantage' or the plaintiff must have suffered an injury or both." *Id*. Third, "reformation's requirement of fraud or inequitable conduct roughly mirrors the fraud element of equitable estoppel." *Id*. While the Sixth Circuit remanded to the district court to consider these factors in the first instance, it noted that the Defendant's violation of § 102 of ERISA by failing to describe an exclusion in its SPD constituted a breach of its duty to the plaintiff. *See also Singletary v. UPS*, 828 F.3d 342, 348-49 (5th Cir. 2016) (holding that "[a]n incomplete SPD violates '§ 102 of ERISA and [is] also a fiduciary violation'" because plan sponsors have a "[d]uty of disclosure" under ERISA) (internal citation omitted). Notably, the plaintiff in *Pearce* did not allege that Defendants' violation of § 102 was intentional, and the Sixth Circuit was clear that this did not preclude reformation.

8. As this Court's summary judgment decision recognizes, "ERISA's central object is to protect employees' justified expectations of receiving the [retirement] benefits their employers promise them." *Pedersen*, 742 F. Supp.3d at 731. For this reason, ERISA § 102(a) requires that SPDs be "written in a manner calculated to be understood by the average plan participant" and must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under

the plan." 29 U.S.C. § 1022(a). Here, because Defendants interpreted the "uncapped" denominator in the plan language to reduce the benefits of participants hired before age 35 below 2% of final average pay, the ERISA regulations required the reduction to be clearly and understandably identified and disclosed in the SPDs. *Pedersen*, 742 F. Supp. 3d at 745-47.

9. This Court previously found that Defendants violated ERISA § 102 by failing to "explain the effect of the lack of a cap on the [] fraction's denominator for participants who were hired before age 35."[3] *Pedersen*, 742 F. Supp. 3d at 746. Specifically, four different SPDs distributed to the participants from 2002 to 2017 described the Plan's benefit formula as providing 2% of final average monthly earnings per year of credited service up to a maximum of 30 years, without explaining or illustrating how an "uncapped" denominator to a fraction could reduce the 2% of final pay rate down to as little as 1.33% of final pay for participants hired before age 35. Defendants similarly failed to clearly disclose the impact of the "uncapped" denominator on the subclass in other communications with participants, including nationwide presentations the El Paso Corporation in the Fall of 2005 and the Pension Option Forms provided each participant when he or she commences retirement benefits. The Court therefore agreed with the Plaintiffs that "the Coastal SPDs' lack of clarifying examples and illustrations *ha[d] the effect of misleading participants*." *Id*. at 746 (emphasis added).

10. The record also supports a finding that there was a large difference between the benefits participants reasonably expected to receive based on the descriptions in the SPDs compared

[3] Although Defendants point out that the Court called the § 102 "a close case," *Pedersen*, 742 F. Supp. 3d at 746, that statement does not alter the Court's substantive holding that Defendants violated ERISA by failing to understandably disclose the impact of the 2001 formula change.

to the benefits Defendants actually paid, which resulted in savings to the plan sponsor that Defendant Kinder Morgan Inc. estimated "to be in excess of $100 million." *See* ECF No. 245-9 (2024 Kinder Morgan Form 10-K); ECF No. 245-10 (Rugeley Decl.) at ¶¶ 8-9.

11. Defendants "saved millions for the plan sponsor" through its interpretation of the "uncapped" denominator in the Coastal Benefit Transition formula to and avoided "employee backlash" by not adequately disclosing the formula's effect. M&R at 15. However, the M&R concludes that Plaintiffs are not entitled to reformation because "there is no evidence that Defendants *sought* to avoid adverse consequences." *Id*. (emphasis added).

12. The Court finds that the M&R's reasoning is in conflict with the Supreme Court's instruction that "intention to defraud or misrepresent" is not required to prove equitable fraud. *Pearce*, 893 F.3d at 347 (quoting *Capital Gains Research Bureau, Inc.*, 375 U.S. at 193); *see also Amara v. CIGNA Corp.*, 775 F.3d 510, 526 (2d Cir. 2014) (Equitable fraud "generally consists of obtaining an undue advantage by means of some act or omission which is unconscientious or a violation of good faith.") (internal quotation marks omitted).

13. The Court also finds that the fact that the 2001 amendment did not violate ERISA's anti-cutback provision does not "undermine[] the notion that there were 'savings to pocket' [for Defendants] or a 'motive to hide' the formula's effect."[4] M&R at 15 (internal citations

[4] At oral argument on Plaintiffs' objections, Defendants suggested that the inadequate disclosures in the SDPs did not correspond to a change in the benefit accrual formula that decreased subclass members' benefits. But this is misleading. In fact, Defendants *did* amend the benefit transition formula in a way that negatively impacted subclass members in 2001. As this Court has explained, the amended plan—but not the pre-2001 plan—"provide[d] that the numerator of th[e] fraction is calculated *with* reference to the March 31, 2006 cut-off date, while the denominator is calculated *without* reference to the same." *Pedersen*, 742 F. Supp. 3d at 744 (emphasis in original). "The effect [of this change] [wa]s that individuals who worked before and after the 2006 cut-off date saw a significant reduction in projected accrued benefits after the 2001 merger." *Id*.

omitted). While it is true that the 2001 formula change did not impact participants' already-accrued benefits (and thus did not run afoul of ERISA's anti-cutback provision), it did have a negative impact on subclass members' *future* benefits. *See Pedersen*, 742 F. Supp. 3d at 745 (stating that the new formula "was certainly unfavorable to benefit accrual subclass members").

14. The Court finds that Defendant's violation of § 102 of ERISA in failing to adequately explain the impact of the "uncapped" denominator on subclass members' future benefits entailed "a breach of legal. . . duty, trust, or confidence." *Pearce*, 893 F.3d at 194. The Court further finds that Defendants gained an "undue advantage" from this breach by achieving millions of dollars of savings while simultaneously avoiding backlash from the impacted employees. *Pearce*, 893 F.3d at 194; *see also Amara*, 775 F.3d at 527 ("[T]he district court did not err in finding that defendants obtained undue advantage. . . by avoiding adverse employee reactions."). Proof that Defendants affirmatively intended to mislead plan participants is not required for a finding of equitable fraud, and the fact that such proof was available in similar cases does not bar relief here. *Capital Gains Research Bureau, Inc.*, 375 U.S. at 193.

15. The Court also finds that subclass members "suffered an injury" from Defendants' breach of duty. *Pearce*, 893 F.3d at 194. The record indicates that participants hired before age 35 were actually unaware of the negative impact of the "uncapped" denominator on their pension benefits until Curtis Pedersen discovered them in a calculation prepared for him at the end of 2019. It is undisputed that not even one of the approximately 2,800 plan participants whose benefits were negatively impacted complained about the 2001 formula change, despite the fact that many have long histories of raising challenges to other similar

unfavorable changes to their benefits. This fact supports a "reasonable inference" that the subclass members were actually misled by Defendants' failure to comply with ERISA's disclosure requirements. *See Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 213 (2d Cir. 2017) (affirming the district court's ability to draw a "reasonable inference that participants were ignorant of the [unfavorable plan impacts]" from "the fact that not a single plan participant ever complained"). Subclass members' inaccurate understanding of the formula not only prevented the subclass from raising their concerns about the negative impacts of the new formula with their employer; it also prevented them from planning for retirement with an accurate understanding of their future benefits.[5] *Amara*, 775 F.3d at 527 ("By hiding the truth about the plan, CIGNA prevented *all* of its employees from becoming disaffected,

[5] Subclass members' lost opportunities to plan for retirement with an accurate understanding of their pension benefits is sufficient, standing alone, to show that subclass members were injured by the misleading SPDs for the purposes of equitable fraud. However, the Court also finds that the M&R's finding that "nothing indicates that more extensive disclosures would have prompted Defendants to abandon the Coastal Transition Benefit formula" is not supported by the record. M&R at 20-21. This finding is based on Defendants' assertion that "Kinder Morgan's only response [to employee complaints about the formula] would have been to confirm the formulas as written." ECF No. 246 at 25. But Defendants have not produced any evidence to support this conclusion beyond the fact that the formula itself did not violate ERISA, and the Court finds that this assertion lacks support in the record. The record indicates that the El Paso Corporation (not Kinder Morgan Inc.) was the company responsible for decisions about the benefit formulas from 2001 through 2012. The record further shows that the El Paso Corporation was responsive to employee complaints about the cutback in early retirement benefits in 2007, and that El Paso made different representations about the Plan's formulas in the course of the *Tomlinson v. El Paso* class litigation, thereby indicating that its interpretation of the formulas was not unchangeable. *See* ECF No. 104-13 at 4, Norma Ortega email to HR manager Michael Chio); *Pedersen*, 742 F. Supp.3d at 741-42 (discussing impact of the *Tomlinson v. El Paso* litigation on this case). While it is impossible to know how things would have been different had Defendants clearly explained the impact of the 2001 formula change on participants such as Mr. Pedersen, there is at least some evidence in the record to suggest that the El Paso Corporation would have taken steps to address participant concerns about these negative impacts, had participants been able to raise these concerns at the time.

spreading knowledge regarding the plan to others who stood to lose more from the benefit conversion, and from planning for their retirement.”).

16. These findings are sufficient to prove, by clear and convincing evidence, that Plaintiffs were mistaken about the effects of the post-2001 benefit accrual formula and that Defendants’ violation of ERISA § 102 constituted fraud or inequitable conduct.

17. Plaintiffs’ request for reformation of the Coastal Benefit Transition formula is therefore GRANTED. The Court has determined that it is appropriate for the plan language to be reformed to apply the benefit formula that participants reasonably expected based on the SPDs: 2% of final average pay per year of credited service up to a maximum of 30 years, without any reduction obtained by multiplying the 2% benefit by a fraction with an “uncapped” denominator.

18. Plaintiffs’ request is further GRANTED for an injunction to retroactively enforce the Plan as reformed using the methodology described in Malcolm Rugeley’s July 18, 2025 declaration (ECF No. 245-10 at 4-6).

19. Because the Court concludes that reformation is warranted, it need not address Plaintiffs’ objections to the M&R’s recommendation that Plaintiffs’ alternative requests for broader injunctive relief and surcharge should be denied. These recommendations are rendered moot by the Court’s ruling on reformation.

## II. <u>Relief for the Early Retirement Cutback Violation</u>

20. With respect to the Early Retirement subclass, the Court previously found that Plaintiffs were entitled to judgment as a matter of law on Claims IV and V of Plaintiffs’ Amended Complaint. On Claim IV, the Court found that the Ninth Amendment to the plan violated

ERISA § 204(g)'s anti-cutback prohibition by preventing subclass members from "growing into" early retirement eligibility at age 55 and eliminated their entitlement to unreduced early retirement benefits at age 62 (rather than age 65). *See Pedersen*, 743 F. Supp. 3d at 747-48. On Claim V, the Court found that the plan administrator's 2018 interpretation of the plan's ANR Legacy provision which similarly would have eliminated subclass members' entitlements to unreduced benefits at age 62 was legally incorrect and an abuse of discretion. [6] *Id*. at 750-54.

21. "Equitable relief usually involves 'two steps': 'Step 1' orders the terms of the plan 'to be reformed' or enjoined and 'Step 2' orders the plan administrator and other fiduciaries 'to enforce the plan as reformed.'" M&R at 25 (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 435 (2011)).

22. The M&R recommends that the Court "reform the Ninth Amendment to remove the provisions that violated ERISA's anti-cutback provision and enjoin Defendants from applying an interpretation of the ANR Legacy that this Court rejected." M&R at 10. The M&R recommends adopting Plaintiffs' proposed language for reformation of the Ninth Amendment. *See* M&R at 23-24. Neither party has objected to the recommended language of the reformed Ninth Amendment or the recommendation that Defendants be enjoined

[6] The Court notes that Claims IV and V, though based on different changes to the plan/plan interpretation, both address the elimination of certain plan participants' entitlement to unreduced early retirement benefits at age 62. Based on Plaintiffs' clarification that that Claim V is a standalone claim rather than an alternative to Claim IV, the Court previously inferred that "there must be some class members who are eligible for unreduced benefits under Plaintiffs' interpretation of the ANR Legacy provision, but who would not otherwise be eligible to grow into early retirement." *Pedersen*, 742 F. Supp. 3d at 750 n. 10. While the Court was "skeptical that such a class member exists," it nonetheless proceeded to address Claim V "for the avoidance of doubt." *Id*. Because the impact of the violations described in Claim IV include the impact of the violation described in Claim V, these claims may be addressed together for the sake of awarding equitable relief.

from applying the unlawful 2018 interpretation of the ANR Legacy Provision. Finding no clear error, the Court therefore ADOPTS these recommendations.

23. Plaintiffs also request that the Court award uniform relief for the ERISA violations found in Claims IV and V in the form of 36 months of unreduced benefits to the entire Early Retirement subclass, to account for the 36-month period between ages 62 and 65 during which participants should have been eligible for unreduced benefits. *See* ECF No. 245 at 33-35. Defendants object on the basis that any class-wide theory of harm necessarily assumes that participants would have remained employed longer than they did, delayed or accelerated retirement, or made different benefit elections and is therefore purely speculative. *See* ECF No. 246 at 29.

24. The M&R agrees with Defendants and recommends denying Plaintiffs' requested relief on the grounds that it is "overly broad, speculative, and would give many members a windfall." M&R at 25. Instead, the M&R recommends that:

> the appropriate remedy is to order and enjoin Defendants to enforce the plan as reformed. Participants who are currently eligible to elect to receive early retirement benefits (those between ages 55 and 64 with five years of service) would be allowed to exercise their election. Retirees and former employees who retired after age 55 but before age 65 and did not elect to receive a lump sum would receive past-due benefits, to be paid in a lump sum, as well as their monthly annuity payments going forward. And Defendants must recalculate benefits (and pay any difference) for members who took a lump sum that should have been calculated based on their eligibility for early retirement benefits.

M&R at 29.

25. This recommendation would exclude three groups of subclass members from any form of relief: subclass members who (i) left employment at ANR before age 55, (ii) did not commence a benefit until after age 62, or (iii) elected lump sum distributions before age 55. *See* M&R at 24-29.

26. Plaintiffs' objections to the M&R's recommended relief are SUSTAINED IN PART. Specifically, the Court SUSTAINS Plaintiffs' objections to the M&R's exclusion of portions of the subclass from equitable relief, but OVERRULES Plaintiffs' objections to the M&R's recommendation to deny relief in the form of a blanket award of 36 months of unreduced benefits.

27. The Court agrees with Plaintiffs that the entire early retirement subclass is entitled to equitable relief for the violations of ERISA found on Claims IV and V. In excluding the aforementioned three groups of subclass members from relief, the M&R relies on *Cottillion v. United Refining Co.*, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013), *aff'd*, 781 F.3d 47 (3d. Cir. 2015). In *Cottillion*, the district court denied equitable relief to employees "ha[d] reached their early retirement age but ha[d] not yet applied for benefits" on the grounds that such relief would be "entirely speculative." *Id*. at *8. On appeal, the Third Circuit affirmed. *Cottillion v. United Ref. Co.*, 781 F.3d 47, 62 (3d Cir. 2015). The Third Circuit rejected the plaintiffs' argument that "there [wa]s no economic incentive" for such employees to delay commencing an unreduced early retirement benefit on the grounds that it was factually inaccurate. *Id*. Rather, the Third Circuit pointed out that "[b]ecause retirement benefits are generally less than salary, there is an incentive to keep working and to continue to be paid for full-time work instead of electing to receive pension benefits conditioned on retirement." *Id*.

28. The M&R concluded that the reasoning in *Cottillion* applies to this case. *See* M&R at 27. But this conclusion overlooks a key difference between this case and *Cottillion*: here, the Court has previously found that "[u]nder Kinder Morgan's plan, eligible former and current ANR employees may commence benefits without retiring." *Pedersen v. Kinder Morgan*

*Inc.*, 345 F.R.D. 302, 315 (S.D. Tex. 2024). Because the plan at issue in this case did not require otherwise eligible participants to actually retire in order to commence benefits, the Court concluded that "there is no economically sound reason for individuals to opt out of receiving early retirement benefits to which they are entitled." *Id*. This fact distinguishes the case from *Cottillion* and renders its reasoning inapplicable here.

29. The same reasoning applies to subclass members who elected lump-sum payments prior to age 55 such that their payment was not actually decreased by the Ninth Amendment.[7] Under the Ninth Amendment, there was no economic incentive for plan participants to wait until age 55 to elect a lump-sum payment because even if they did so, they would not have received the value of the early retirement benefits that existed prior to the Ninth Amendment. Defendants do not dispute that lump sum payments are derived from early retirement benefits such that, but for the Ninth Amendment, participants who elected a lump sum after attaining age 55 would have been entitled to a larger payment than they in fact received. But the Court agrees with Plaintiffs that it is not appropriate to condition relief for lump-sum recipients on waiting until age 55 to elect a lump sum because the Ninth Amendment eliminated any financial incentive to do so. The Court therefore concludes that subclass members who elected lump sum distributions before age 55 are entitled to equitable relief.

30. For similar reasons, the Court finds that those participants who left employment at ANR before age 55 are nonetheless entitled to equitable relief. Although this group presents a

[7] While the Court concludes that subclass members who elected lump-sum payments should be included in the relief, regardless of whether they did so before or after age 55, it is important to note that this does not include participants who took lump-sum payments based on early retirement eligibility prior to the 2007 plan changes. The Court previously found that such individuals "do not belong to [the Early Retirement] subclass." *Pedersen*, 345 F.R.D. at 316.

closer case, the Court agrees with Plaintiffs that excluding these subclass members would be contrary to the "deemer" provision in the reformed Ninth Amendment. The reformed amendment provides that the members of the Early Retirement subclass "shall be deemed to have terminated employment after attaining age 55 for purposes of determining whether the Participant is entitled to an Early Retirement Benefit in lieu of a Vested Termination Benefit." M&R at 23. Defendants did not object to this language and have not proposed contrary language. The Court agrees with Plaintiffs that in light of the violations found in Claim IV, it is appropriate to determine subclass members' eligibility based on their position at the time that the Ninth Amendment was enacted.[8]

31. The M&R also finds that class-wide relief is not warranted because "Plaintiffs proffered no evidence that individuals who never reached early retirement, chose lump sum payouts before age 55, retired at age 65 or later, or remain employed would have behaved differently but for the cutback." M&R at 27. But the Supreme Court has held that at equity, "there is no general principle that 'detrimental reliance' must be proved before a remedy is decreed[,]" including the remedy of reformation. *Amara*, 563 U.S. at 443.To the extent that the M&R imposes a *de facto* class-wide detrimental reliance requirement, the Court finds that such a requirement is not supported by the law. The Court also rejected similar arguments by Defendants in its decision on class certification. *See Pedersen*, 345 F.R.D. at 315-16. For the reasons stated herein as well as the reasons articulated in the Court's decision on class certification, the Court concludes that the record supports a reasonable inference that all Early Retirement subclass members were harmed by the violations found

[8] While prior to the reformation, this provision applied only to participants who were at least age 53 but not yet age 55, this fact does not change the Court's conclusion that the deemer provision remains appropriate as reformed.

in Claims IV and V. As such, it is within this Court's discretion to award them equitable relief.

32. However, the Court agrees with Judge Ho's conclusion that Plaintiffs' request to award 36 months of unreduced benefits to all subclass members is overly broad and would constitute a windfall for many participants. For instance, someone like Mr. Pedersen, who elected to receive a reduced benefit at age 62, would receive 36 months of unreduced benefits on top of the reduced benefits he already received between ages 62 and 65. Likewise, someone who received a lump sum payment that was negatively impacted by the Ninth Amendment would receive 36 months of unreduced benefits as though they had elected an annuity. While the Court understands the practical appeal of uniform relief, this proposal resembles damages, not equitable relief. Plaintiffs provide no satisfactory justification for the vast discrepancies between their proposed relief and the harms suffered by subclass members.

33. The Court therefore ADOPTS the M&R's recommendation that "the appropriate remedy is to order and enjoin Defendants to enforce the plan as reformed." M&R at 29. However, the Court agrees with Plaintiffs that all current or former ANR employees who were prevented by the Ninth Amendment (or the 2018 interpretation of the ANR Legacy Provision) from "growing into" early retirement eligibility, even if they are not currently eligible for early retirement because they left ANR or took a lump sum payment prior to age 55 should be included in this relief.[9] Likewise, individuals like Ms. Leutloff who

[9] Defendants also argue that "participants who, under the 'greater of' formula in the Plan, received more benefits under the cash balance formula than under the Coastal Transition Benefit formula, were not harmed and therefore should be excluded from equitable relief." ECF No. 246 at 29. The Court agrees with Defendants and the M&R that this should be uncontroversial. To the extent such participants exist and are otherwise members of the subclass, the Court declines to award relief to participants whose benefits were greater under the cash balance formula than under the Coastal Transition Benefit formula.

"could have commenced retirement benefits at age 62-64 between 2018 and the present date" but did not do so are entitled to relief.

34. The Court therefore ORDERS as follows. Defendants are ORDERED and ENJOINED to enforce the plan as reformed. Participants who are currently eligible to elect to receive early retirement benefits (those between ages 55 and 64 with five years of service) must be allowed to exercise their election. Retirees and former employees who commenced retirement benefits after age 55 but before age 65 and did not elect to receive a lump sum will receive past-due benefits, to be paid in a lump sum, as well as their monthly annuity payments going forward. Subclass members who commenced retirement benefits at or after age 65 will receive 36 months of unreduced retirement benefits to account for the three years between ages 62 and 65 when they should have been entitled to unreduced benefits. Defendants must recalculate benefits (and pay any difference) for members who took a lump sum that should have been calculated based on their eligibility for early retirement benefits. Subclass members who received a lump sum distribution prior to age 55 will be deemed to have elected a lump sum at age 55 such that it includes the value of the unreduced early retirement benefits. Defendants must similarly recalculate benefits and pay any difference for these members.

35. The Court recognizes that this relief will require more individualized calculations and more effort from both parties to determine the relief to which class members are entitled than the blanket relief proposed by Plaintiffs (or the narrower relief proposed by Defendants). But the nature of "make whole" relief necessitates that any relief be tailored to address the impacts of the ERISA violations on each participant. To the extent that Plaintiffs' objection to the M&R's "failure to set forth detailed methodologies for recalculating benefits" still

applies to the altered relief ordered by this Court, it is OVERRULED. The Court has provided the method by which Defendants must recalculate benefits for all subclass members based on the way in which their benefits were impacted by the violations described in Claims IV and V. The parties, not this Court, are in the best position to implement the calculations described in this order. To the extent that parties do not understand or are unable to calculate benefits in the way described by the Court, they may bring these difficulties to the Court's attention within 30 days.

## III. Prejudgment Interest

36. The M&R recommends awarding Plaintiffs prejudgment interest on any retroactive relief at the interest rates specified in Tex. Fin. Code Ann. 304.003(c) for the specific months that the benefit payments were due. *See* M&R at 30-32. Neither party has objected to this portion of the M&R. Finding no clear error, the Court therefore ADOPTS the M&R's recommendation with regard to the applicable prejudgment interest rates.

## IV. Scheduling

37. Defendants are ORDERED to produce the data needed to calculate relief for the Benefit Accrual subclass as specified in Mr. Rugeley's declaration within 30 days of this Order. If Defendants require an extension of this deadline, they should confer with counsel for Plaintiffs and submit a request for extension to the Court.
38. Defendants are further ORDERED to identify any questions they have concerning implementation of the relief and meet and confer with counsel for Plaintiffs' on resolution

of those questions before presenting unresolved questions to this Court within 30 days of this Order.

39. Plaintiffs are ORDERED to file their motion for attorneys' fees and expenses and for incentive awards to the named Plaintiffs within 30 days of this Order.

**IT IS SO ORDERED.**

Signed at Houston, Texas on August 10, 2026.

Keith P. Ellison
United States District Judge